**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Johnny Edward HODGE, Linda S. Jones and James A. Herrin,**
**Defendants-Appellants.**

**Nos. 78–1532, 78–1568 and 78–1569.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1979.

Decided March 28, 1979.

Rhett L. Tauber, I. Alexander Woloshansky, Merrillville, Ind., for defendants-appellants.

Andrew B. Baker, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before CUMMINGS and SPRECHER, Circuit Judges, and LEIGHTON, District Judge.[*]

SPRECHER, Circuit Judge.

The two major issues in this appeal are the effect of *Rakas v. Illinois,* —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) upon standing to raise Fourth Amendment rights and our declination to adopt a *per se* rule that contingent fee arrangements with informants are invalid.

I

In the middle of September, 1977, the Drug Enforcement Administration employed Karl Hobbs as a confidential informant. Shortly thereafter Hobbs contacted his second cousin, defendant James Herrin, in regard to the possible purchase of drugs. In the meetings which followed, Hobbs was customarily searched by government officers, was fitted with a Kel-Set body transmitter, and provided with a sum of currency, the serial numbers of which had been recorded. In addition, between September 30 and November 4, 1977 Hobbs was one of the parties to fifteen tape-recorded and monitored telephone calls in which drug purchases were discussed.

As a result of these activities, on October 28, 1977, Hobbs went to 1969 West 13th Avenue, Gary, Indiana, for the purpose of meeting defendant Linda Jones. Defendant Herrin arrived at the same time Hobbs did and both went to the second floor apartment where they met Linda Jones. Hobbs also heard defendant Johnny Hodge's voice coming from another room. Hobbs purchased a measured spoon of heroin for $400. Hobbs, Herrin and Jones discussed the quality of the drug and the amount of cutting it would require. The conversation was monitored on the Kel-Set.

After other recorded telephone calls, on November 4, 1977, Hobbs went to the same apartment where he met Hodge, who sold him two spoons of heroin for $725 and gave him a foil packet sample of cocaine as a gift.

On November 4, 1977, a search of the second floor apartment at 1969 West 13th Avenue, took place pursuant to a search warrant issued the same day. The search resulted in the seizure of a quantity of heroin and some of the marked currency.

Hodge, Herrin, Jones and Ruby Johnson, the lessee of the apartment, were indicted for unlawful distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and for conspiracy to so distribute in violation of 21 U.S.C. § 846. A jury found Ruby Johnson not guilty but the other defendants were found guilty.

Hodge, Jones and Herrin appealed on the grounds that (1) Linda Jones's motion to suppress evidence should have been granted; (2) the defendants' due process rights were violated by the government's hiring of a paid informant on a contingent fee arrangement; and (3) the district court erred in allowing recorded tapes to be played for the jury.

II

Only one defendant, Linda Jones, filed a motion to suppress. The only evi-

---

[*] District Judge George N. Leighton of the Northern District of Illinois is sitting by designation.

dence she presented at the suppression hearing which connected her to the searched apartment was that she was present at the time of the search. There was uncontradicted evidence and the district court found that Ruby Johnson, the only defendant found not guilty by the jury, was the lessee of the apartment and paid $110 per month rent.

Linda Jones has relied upon the language in *Jones v. United States*, 362 U.S. 257, 267, 80 S.Ct. 725, 734, 4 L.Ed.2d 697 (1960) that "anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." A few weeks after Linda Jones filed her brief in this court, the Supreme Court in *Rakas v. Illinois*, —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (December 5, 1978) abandoned the language "legitimately on premises" for the doctrine of "legitimate expectation of privacy in the premises" which are being used by a guest or friend. In the future, such situations are to be decided on a case-by-case analysis with "legitimate presence" a factor to be considered but not controlling.

In *Jones* itself, the apartment belonged to Evans who gave his friend Jones the use of it and a key with which Jones had admitted himself on the day of the search. Jones had a suit and shirt at the apartment, he had slept there "maybe a night," and at the time of the search Evans had been away in Philadelphia for about five days. *Jones v. United States, supra*, 362 U.S. at 259, 80 S.Ct. 725. The Court made clear that the friend or guest must be "legitimately" on the premises and "[t]his would of course not avail those who, by virtue of their wrongful presence, cannot invoke the privacy of the premises searched." Id. at 267, 80 S.Ct. at 734.

The search revealed eleven gelatin capsules, two tin foil packets and $20 in marked money which were in the pockets of a leather, jacket-length patchwork coat locat-ed in the northeast bedroom of the searched apartment. The capsules and foil packets contained heroin with methapyrilene, quinine and lactose. At the trial Ruby Johnson testified that the coat did not belong to Linda Jones. There was no evidence offered at the suppression hearing as to the ownership of the coat. The search also disclosed seven capsules with the same heroin mixture, which were found in a trash can in the same bedroom.

Linda Jones simply established her presence at the apartment at the time of the search, but she failed to establish her "legitimate" presence there. Under *Jones*, she did not sufficiently invoke her right to Fourth Amendment protection. Under *Rakas* she was even more certainly not entitled to that protection. The majority opinion noted that:

> [A] casual visitor who walks into a house one minute before a search of the house commences and leaves one minute after the search ends . . . [has] absolutely no interest or legitimate expectation of privacy . . . in the house, and it advances no purpose served by the Fourth Amendment to permit . . . [that visitor] to object to the lawfulness of the search.

*Rakas v. Illinois, supra*, —— U.S. at ——, 99 S.Ct. at 430.

The district judge without referring to *Rakas* stated in his memorandum opinion that "the issue of standing was never raised or argued by either the United States or the defendants." While we agree with all of the reasons set forth by the district court in denying Linda Jones' motion to suppress, we affirm his denial also on the lack of her standing to raise the issue.[1]

### III

■ The defendants have argued that their due process rights were violated by the government's use of a paid informer engaged upon a contingent fee arrangement, relying upon *Williamson v. United*

---

1. The district court added that "[t]here is a substantial question in the Court's mind as to whether any of the defendants, with the exception of Ruby Johnson, had any standing to object to the search of the apartment on November 4, 1977."

*States*, 311 F.2d 441 (5th Cir. 1962), *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 724 (1965).

*Williamson* (with one judge dissenting) held that convictions based on evidence of informers hired under a contingent fee agreement to produce evidence against particular named persons as to crimes not yet committed could not stand. However the court qualified this holding with the significant words "without some justification or explanation." The court explained that:

It may possibly be that the Government investigators had such certain knowledge that Williamson and Lowrey were engaged in illicit liquor dealings that they were justified in contracting with Moye on a contingent fee basis, $200.00 for Williamson and $100.00 for Lowrey, to produce the legally admissible evidence against each of them. It may be also that the investigators carefully instructed Moye on the rules against entrapment and had it clearly understood that Moye would not induce them to commit a crime, but would simply offer them an opportunity for a sale. None of these facts or circumstances were developed in the evidence . . . .

Id. at 444.

The Fifth Circuit itself has "confined *Williamson* to a narrow set of circumstances" and factors in addition to those listed above have been held to militate against its application. *United States v. McClure*, 577 F.2d 1021, 1022 (5th Cir. 1978).

The Sixth and Ninth Circuits have repudiated *Williamson* completely. *United States v. Grimes*, 438 F.2d 391, 394 (6th Cir.), *cert. denied*, 402 U.S. 989, 91 S.Ct. 1684, 29 L.Ed.2d 155 (1971); *United States v. Jones*, 575 F.2d 81, 85 (6th Cir. 1978); *United States v. Reynoso-Ulloa*, 548 F.2d 1329, 1338 (9th Cir. 1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978).

Hobbs, the paid informant here, was compensated if he contacted and made purchases from "anyone within their [Johnny Hodge and Roderick Hicks] organization that deals in narcotics." According to the testimony of the police officer who hired him "he was then given the assignment to work on several different drug violators or traffickers." The affidavit for the search warrant stated that Hobbs "has purchased heroin . . . [for the police] on three (3) separate occasions and has provided information . . . which has been corroborated by independent sources." He was not a bounty hunter out to trap specified innocent victims.

In *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973), the Court said:

While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, . . . the instant case is distinctly not of that breed. [The undercover agent's] . . . contribution . . . to the criminal enterprise already in process was scarcely objectionable.

\*　　\*　　\*　　\*　　\*　　\*

[T]he infiltration of drug rings and a limited participation in their unlawful present practices . . . is a recognized and permissible means of investigation . . . .

The entrapment defense "focus[es] on the intent or predisposition of the defendant to commit the crime," *Russell, supra*, at 429, 93 S.Ct. at 1641, rather than upon the conduct of the government's agents. The Supreme Court "ruled out the possibility that the defense of entrapment could ever be based upon governmental misconduct in a case . . . where the predisposition of the defendant to commit the crime was established." *Hampton v. United States*, 425 U.S. 484, 488–89, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976).

■ The predisposition of the defendants to engage in criminal activities was established beyond all reasonable doubt by the evidence, including the recorded conversations of the defendants. This case is unlike the *Williamson* case and does not represent

the "outrageous" case which might violate Due Process. We decline to apply under our supervisory powers a *per se Williamson* rule that all contingent fee arrangements with informers are invalid. The method of payment is properly a matter for the jury to consider in weighing the credibility of the informant. *United States v. Gardner*, 516 F.2d 334, 343–44 (7th Cir.), *cert. denied*, 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975).

## IV

Finally the defendants have argued that the taped telephone conversations and Kel-Set tapes were not properly introduced. It is settled that the defendants' Fourth Amendment rights are not violated when the defendants' conversations with a government informant are electronically monitored by a government agent with the consent of the informant. *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). The defendants contended, however, that there was insufficient evidence that Officer Stanford was competent to operate the electronic equipment and that the government failed to establish a chain of custody.

As to the telephone recordings, Officer Stanford testified at length as to the procedure for recording the calls, which were recorded by a Sony tape recorder which he had used on about 50 prior occasions. Both Stanford and the informant Hobbs testified that the recordings were monitored by Stanford and reviewed immediately after they were made. Stanford testified that the tapes accurately reflected the conversations which he monitored. Stanford sealed the tapes in plastic evidence bags which remained sealed until opened in court by Stanford.

As to the Kel-Set tapes, Stanford installed the transmitter on Hobbs in Sergeant Colby's presence and Stanford monitored all the conversations. Colby also monitored the October 28, 1977 conversation and Officer Feliciano also monitored the November 4 conversation. Stanford, Colby and Feliciano testified that the recordings which they monitored were accurately recorded in the tapes. These tapes were also sealed in plastic evidence bags.

This procedure was adequate to satisfy foundation requirements, *United States v. McMillan*, 508 F.2d 101, 104–05 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), and to meet the government's burden of showing a chain of custody, *United States v. Santiago*, 534 F.2d 768 (7th Cir. 1976).

The judgments of conviction are affirmed.