UNITED STATES of America, Plaintiff-Appellee,

v.

Adalberto CERVANTES–PACHECO, Jerry Wayne Nelson and William E. Nelson, Defendants-Appellants.

No. 84–2687.

United States Court of Appeals, Fifth Circuit.

Aug. 21, 1987.

Melvyn Kessler, Miami, Fla., for Pacheco and Jerry Wayne Nelson.

Oscar J. Pena, Laredo, Tex., for William E. Nelson.

Robert J. Erickson, Dept. of Justice, Washington, D.C., Susan L. Yarbrough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Ann T. Wallace, U.S. Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL and JONES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants, Adalberto Cervantes-Pacheco, Jerry Wayne Nelson and William E. Nelson, along with five other co-defendants, were charged in a two-count indictment with conspiracy to possess more than 1,000 pounds of marijuana with intent to distribute, 21 U.S.C. §§ 841(a), 846, and conspiracy to import marijuana from Colombia into the United States. 21 U.S.C. §§ 963, 952(a), 960(a)(1). After a jury trial, each appellant was convicted of both charges. We affirm.

## I.

The evidence at trial revealed an active criminal enterprise engaged in importing marijuana from Colombia into the United States that extended from December 1983 until June 1984. Appellant Adalberto Cervantes-Pacheco and Humberto Santos funded the drug-smuggling enterprise and provided the Colombian source for the marijuana. Ronald Sharp worked for Santos and introduced Santos to appellant William Nelson. Nelson's role in the conspiracy was to pilot his DC–7 airplane and transport the drugs into the United States. Appellant Jerry Wayne Nelson helped his brother William Nelson with airplane mechanics and accompanied his brother on the flights to Jamaica and Colombia.

Frank Kelly, who was an experienced pilot, worked as an undercover investigator for the government and infiltrated the drug-smuggling conspiracy by offering to assist in transporting the marijuana. In exchange for his flying services, Kelly received a $20,000 advance from Nelson. After receiving this advance, which was paid on behalf of the drug-smuggling enterprise, Kelly promptly turned over the entire $20,000 to federal investigators.

Kelly previously had worked as a government informer in more than thirty-five cases. Kelly's supervisor, DEA Special Agent Jimmy Bradley, told Kelly to "infiltrate, gather information for intelligence, and report" on William Nelson. Kelly understood that he would be required to testify if Kelly's information led to the indictment and trial of Nelson or other participants in the enterprise.

Kelly's compensation from the government included a per diem, expenses, and a payment at the conclusion of the case based on the government's evaluation of his overall performance. Kelly testified that he did not know what criteria the government used to fix his fee in a particular case, but that he understood the

amount was set by federal officials in Washington. Kelly testified that he could not predict from fees he had earned in previous cases the amount of his fee in this case; the amount of his fee did not depend, however, upon the ultimate outcome of the case or on the arrest or conviction of any defendant.

DEA agent Bradley testified after Kelly completed his testimony. Bradley testified that he was responsible for recommending to his superiors in Washington the amount of Kelly's compensation in this case. Based on a subjective evaluation that Kelly's overall performance was "great," Bradley testified that he was going to recommend that Kelly be paid a fee of $20,-000, the same amount Kelly had previously received from the drug-smuggling enterprise and turned over to federal investigators.

Only two issues were raised on appeal: (1) whether the district court erred by denying a motion for new trial because the government proved at most the existence of multiple conspiracies, not the single conspiracy charged in the indictment; and (2) whether the district court erred in allowing Kelly to testify in view of the government's fee arrangement with him. We agree with the panel's rejection of appellants' argument on the first issue. *United States v. Cervantes-Pacheco*, 800 F.2d 452, 454 (5th Cir.1986). We granted rehearing en banc to reconsider the panel's disposition of the second issue. The panel concluded that the government's payment of a contingent fee to its informant, Kelly, disqualified Kelly as a witness and required reversal of the defendants' conviction under *Williamson v. United States*, 311 F.2d 441 (5th Cir. 1962). For the reasons that follow, we overrule *Williamson* and affirm the convictions in the instant case.

## II.

### A.

In *Williamson*, the government utilized an informer named Robert Moye to infiltrate the bootlegging operation of Jack Williamson and Lee Lowrey. *Williamson v. United States*, 311 F.2d 441 (5th Cir. 1962). The government agents told Moye that they would pay him $10 per day in expenses, as well as $200 if he could "catch" Williamson, and another $100 for Lowrey. The court explained that:

> It may possibly be that the Government investigators had such certain knowledge that Williamson and Lowrey were engaged in illicit liquor dealings that they were justified in contracting with Moye on a contingent fee basis, $200 for Williamson and $100 for Lowrey, to produce the legally admissible evidence against each of them. It may also be that the investigators carefully instructed Moye on the rules against entrapment and had it clearly understood that Moye would not induce them to commit a crime, but would simply offer them an opportunity for a sale. None of these facts or circumstances were developed in the evidence, though Moye's deposition had been taken months before trial.
>
> *Without some such justification or explanation, we cannot sanction a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet committed.* Such an arrangement might tend to a "frame up" or to cause an informer to induce or persuade innocent persons to commit crimes which they had no previous intent or purpose to commit. The opportunities for abuse are too obvious to require elaboration.

*Id.* at 444 (emphasis added). The court reversed Williamson's conviction and held that "Moye's testimony, standing alone and unexplained, discloses a form of employment of an informer which this Court cannot approve or sanction." *Id.*

### B.

Although *Williamson* established a per se rule that an informant paid a contingent fee is not a competent witness, we have not reversed a conviction based on the rule since *Williamson*. Instead we have riddled the rule with exceptions, many of which apply to the instant case. For example, we have held that *Williamson* and its progeny do not apply unless the payment

of the fee is made contingent on conviction of a *pretargeted* individual. *United States v. Garcia,* 528 F.2d 580, 587 (5th Cir.1976). In *Garcia* we refused to extend *Williamson* to the situation "where an informant is paid a subsistence allowance and given a reward, as long as there is no evidence that he had been promised a specific sum to convict a particular person." *Id.* at 586 (citations omitted).

We have found a second exception to *Williamson* when the government knows that the targeted individual was engaged in illicit activity prior to the institution of the contingent fee arrangement. *Harris v. United States,* 400 F.2d 264, 266 (5th Cir. 1968); *Sears v. United States,* 343 F.2d 139, 144 (5th Cir.1965); *Hill v. United States,* 328 F.2d 988, 989 (5th Cir.1964). As *Williamson* itself stated, "it may possibly be that the Government investigators had such certain knowledge that Williamson and Lowrey were engaged in illicit liquor dealings that they were justified in contracting with Moye on a contingent fee basis." *Williamson,* 311 F.2d at 444.

We have also declined to reverse a conviction when the informant's testimony is fully corroborated at trial. In *Henley v. United States,* 406 F.2d 705, 706 (5th Cir. 1969), we explained that "the combined testimony of agent Navarro and Michael Henley himself fully corroborated [the informant's] testimony. Thus, the jury was not required to base its verdict solely on the testimony of a man who admittedly is not a sterling character."

In addition, the cases are conflicting on whether *Williamson* only prohibits the government from agreeing to pay a fee contingent on *conviction* or whether its prohibition also applies to the government's agreement to pay a fee contingent on *implication* of a suspect or some other governmental objective short of conviction. *Compare United States v. Lane,* 693 F.2d 385, 387 (5th Cir.1982) (*Williamson* prohibits fees contingent on implication) *with United States v. Gray,* 626 F.2d 494, 499 (5th Cir.1980) (*Williamson* prohibits fees contingent on conviction).

Thus, because of the exceptions and distinctions to the *Williamson* rule, we have virtually limited *Williamson* to its facts. *United States v. McClure,* 577 F.2d 1021, 1022 (5th Cir.1978). In the process, however, we have vastly complicated the district court's job of determining whether a paid informant may testify and if the witness does testify what special instructions it should give to the jury.

C.

The Supreme Court and four circuits have rejected the *Williamson* rule of per se exclusion either expressly or in principle. In *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the Supreme Court affirmed a bribery conviction even though it was based in part upon the testimony of an informant who was compensated by the government for his assistance. In return for his assistance, the informant's wife received four monthly installment payments of $300 from government funds, and the state and federal charges against the informant were either dropped or not actively pursued. *Id.* at 298, 87 S.Ct. at 411. The Court rejected the argument that the receipt of these benefits created an impermissible risk that the informant might perjure himself. *Id.* at 311, 87 S.Ct. at 418.

> The petitioner is quite correct in the contention that Partin, perhaps even more than most informers, may have had motives to lie. But it does not follow that his testimony was untrue, nor does it follow that his testimony was constitutionally inadmissible. The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury. At the trial of this case, Partin was subjected to rigorous cross-examination, and the extent and nature of his dealings with federal and state authorities were insistently explored. The trial judge instructed the jury, both specifically and generally, with regard to assessing Partin's credibility. The Constitution does not require us to upset the jury's verdict.

*Id.* at 311–12, 87 S.Ct. at 418 (citations omitted).[1]

Considering the strong policy articulated by the Court in *Hoffa* that the credibility of witnesses is to be determined by the jury, it is not surprising that no circuit court has embraced *Williamson.* Predictably, four circuits have expressly rejected *Williamson. United States v. Dailey,* 759 F.2d 192, 199–200 (1st Cir.1985); *United States v. Hodge,* 594 F.2d 1163, 1165–67 (7th Cir. 1979); *United States v. Jones,* 575 F.2d 81, 86 (6th Cir.1978); *United States v. Reynoso-Ulloa,* 548 F.2d 1329, 1338 & nn. 18–19 (9th Cir.1977). For example, the Sixth Circuit has stated that:

> [There is no overriding policy to exclude the testimony of an informant if he is paid under] a contingent fee agreement for the conviction of specified persons for crimes not yet committed. Although it is true that the informant working under this type of arrangement *may* be prone to lie and manufacture crimes, he is no more likely to commit these wrongs than witnesses acting for other, more common reasons.... Rather than adopting an exclusionary rule for a particular factual situation, ... we prefer the rule that would leave the entire matter to the jury to consider in weighing the credibility of the witness-informant. In our view this approach provides adequate safeguards for the criminal defendant against possible abuses since the witness must undergo the rigors of cross-examination.

*Jones,* 575 F.2d at 86 (quoting *United States v. Grimes,* 438 F.2d 391, 395–96 (6th Cir.1971)) (emphasis in original) (citations omitted).

*Jones* affirmed a conviction for the interstate transportation of firearms based in part upon evidence procured by paid informants. As part of the investigation in *Jones,* the government paid a per diem and an award to two acquaintances of the defendant who were instructed to buy firearms from the defendant. *Id.* at 82–83.

The government promised to recommend a $1,000 award, depending on whether the investigation was successful. *Id.* Although the paid acquaintances of the defendant did not testify at trial, the government agents testified regarding the paid informants' successful purchase of firearms from the defendant. *Id.* at 83. Rejecting *Williamson,* the court found no due process violation in the use of a contingent fee and declined to reverse the conviction. *Id.* at 86.

Similarly, the Seventh Circuit has declined to apply "a *per se Williamson* rule that all contingent fee arrangements with informers are invalid." *Hodge,* 594 F.2d at 1167. *Hodge* involved a paid government informant who was assigned to investigate several different drug traffickers. *Id.* at 1166. The informant's compensation depended on whether he contacted or purchased narcotics from anyone within the narcotics organizations being investigated. *Id.* The informant had worked with police on three prior occasions and provided information which was corroborated by independent sources. *Id.* The court rejected the argument that the testimony of the paid government informant should have been excluded. "The method of payment is properly a matter for the jury to consider in weighing the credibility of the informant." *Id.* at 1167.

We followed the *Hoffa* rationale in *United States v. Kimble,* 719 F.2d 1253 (5th Cir.1983). The convictions in *Kimble* were based in part on the testimony of Steve Thomas Simoneaux, who agreed to cooperate with federal authorities in exchange for a favorable sentencing agreement. *Id.* at 1255. Conditioned on the adequacy of his cooperation, Simoneaux was to be sentenced to twenty years imprisonment to run concurrently with sentences in Texas for armed robbery. *Id.* In addition, Simoneaux was given immunity from testimony-related federal offenses, and federal authorities agreed not to furnish information on state crimes to state authorities. *Id.*

---

1. *Cf. United States v. Murphy,* 41 U.S. (16 Pet.) 203, 209, 10 L.Ed. 937 (1842) ("a person who is to receive a reward for or upon the conviction of the offender ... is universally recognized as a competent witness.") (Story, J.).

The court in *Kimble* rejected the argument that Simoneaux's testimony was per se incredible because of the plea arrangement. *Id.* at 1256. Considering that Simoneaux was extensively cross-examined about the precise nature of the plea agreement, *id.* at 1255, the court found no reason to exclude the testimony or reverse the convictions. *Id.* at 1257. "The jury had both the power and duty to determine whether Simoneaux was to be believed in whole or in part," the court explained, and "the plea agreement ... went to the weight of Simoneaux's testimony, not its admissibility." *Id.* at 1257.

### D.

■ No practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence. It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence, but courts uniformly hold that such a witness may testify so long as the government's bargain with him is fully ventilated so that the jury can evaluate his credibility.[2] A witness such as Kelly who is paid a fee for his services has less of an inducement to lie than witnesses who testify with promises of reduced sentences. It makes no sense to exclude the testimony of witnesses such as Kelly yet allow the testimony of informants such as those in *Hoffa* and *Kimble* who are testifying with the expectation of receiving reduced sentences. We therefore join our sister circuits, discussed above, who have faced this problem and conclude that the compensated witness and the witness promised a reduced sentence are indistinguishable in principle and should be dealt with in the same way. We therefore hold that an informant who is promised a contingent fee by the government is not disqualified from testifying in a federal criminal trial. As in the case of the witness who has been promised a reduced sentence, it is up to the jury to evaluate the credibility of the compensated witness.

Our holding today is bolstered by the policy implications of a contrary result. The per se exclusion of whole categories of evidence is disfavored by the Federal Rules of Evidence. It is a fundamental tenet of those rules that, with few exceptions, "all relevant evidence is admissible," Fed.R. Evid. 402, and "every person is competent to be a witness," Fed.R.Evid. 601. The facts of this case argue strongly against the adoption of a per se rule that disqualifies the compensated informer from testifying as a witness. The appellants do not argue that Kelly's testimony was false or that he perjured himself. In fact, Nelson admitted virtually all of the facts elicited during Kelly's testimony, much of which was corroborated by other witnesses. Thus the concern over the truthfulness of a compensated witness that drove *Williamson* to adopt a per se rule is totally absent in this case and demonstrates why it is unwise for us to adhere to the *Williamson* rule.

We also recognize that it is sometimes necessary to compensate an informant before he will agree to undertake the often dangerous task of undercover investigation. "Few would engage in a dangerous enterprise of this nature without assurance of substantial remuneration." *Reynoso-Ulloa*, 548 F.2d at 1338 n. 19. It is simply unreasonable to expect the government "to depend exclusively upon the virtuous in enforcing the law." *United States v. Richardson*, 764 F.2d 1514, 1521 (11th Cir.1985).

■ Adequate rules are in place to protect against abuses. The government of course must not deliberately use perjured testimony or encourage the use of perjured testimony. *Napue v. Illinois*, 360 U.S. 264, 269–70, 79 S.Ct. 1173, 1177–78, 3 L.Ed.2d 1217 (1959); *Hart v. United States*, 565 F.2d 360, 362 (5th Cir.1978). The government must also make a complete and timely disclosure to the accused of the fee arrangement it has made with

---

**2.** *See Dailey,* 759 F.2d at 198– 200 (collecting cases allowing testimony of informants who have been promised reduced sentences).

the informant in accordance with *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). *United States v. Bagley,* 473 U.S. 667, 675–84, 105 S.Ct. 3375, 3380–85, 87 L.Ed.2d 481, 490–95 (1985). The accused must have an adequate opportunity to cross-examine the informant and government agents about any agreement to compensate the witness. *Id.* at 677, 105 S.Ct. at 3381, 87 L.Ed.2d at 491. Finally, the trial court should give a careful instruction to the jury pointing out the suspect credibility of a fact witness who has been compensated for his testimony. *United States v. Beard,* 761 F.2d 1477, 1481 (11th Cir.1985).

### III.

In summary, we hold that the credibility of the compensated witness, like that of the witness promised a reduced sentence, is for a properly instructed jury to determine. Accordingly, we overrule *Williamson* and its per se exclusionary rule.

We remain confident in the jury system and the ability of the jury to weigh the defendant's arguments about the inherent unreliability of "purchased" testimony. For reasons stated above we are persuaded that a per se rule declaring the compensated informant incompetent to testify is neither wise nor necessary.

AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, concurring:

The employment of a witness for a fee contingent upon victory for the party in whose favor he testifies is a violation of both the Model Rules of Professional Conduct [1] and the Code of Professional Responsibility.[2] Yet, because a person interested in the outcome of a case is a competent witness, experts employed on such a contingent-fee basis have been permitted to testi-

**1.** Model Rules of Professional Conduct Rule 3.4 (1983).

**2.** Model Code of Professional Responsibility DR 7–109 (1980).

**3.** *Petition of Shore,* 93 Misc.2d 933, 403 N.Y.S.2d 990, 993 (1978); *New England Telephone &*

fy.[3] No court, so far as I have been able to find, now excludes contingent-fee testimony. The prosecuting attorney is therefore permitted to adduce evidence in a criminal case despite the fact that it is gained by a breach of ethical standards. As the majority opinion points out, the government may also offer witnesses plea bargains for either a reduced sentence or immunity in exchange for their testimony and thus provide an incentive greater even than a contingent fee. If the government may do so, the defendant presumably may also employ experts and other witnesses to testify for a fee contingent on his acquittal. While this balances opportunity equally, it patently permits perversion of the trial process, and I am therefore troubled by the possible results of our decision. Because, however, both the Supreme Court decision in *Hoffa v. United States* [4] and the decisions of every other circuit appear to sanction the use of such testimony, I concur in the result.

GOLDBERG, Circuit Judge, with whom JERRE S. WILLIAMS, Circuit Judge joins, dissenting:

Adhering to the views expressed in the panel opinion, I respectfully dissent. The truth has no marketplace.

I write only to express three simple propositions. First, notwithstanding the majority's conclusion to the contrary, I continue to believe that Kelly's contingent fee depended upon the outcome of the case and the quality of his testimony. Second, the *Williamson* rule not only is wise policy, it is necessary to protect the very integrity of the judicial system and to ensure that testimony will not be bought. Third, that plea-bargaining creates incentives to lie does not point out the lack of problems with contingent fees and associated testimony, but rather the presence of problems with plea-bargaining and associated testimony.

These simple propositions recall the eloquent words of Justice Brandeis:

*Telegraph Company v. Board of Assessors of Boston,* 392 Mass. 865, 468 N.E.2d 263, 268 ( 1984).

**4.** 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

The court's aid is denied only when he who seeks it has violated the law in connection with the very transaction as to which he seeks legal redress. Then aid is denied despite the defendant's wrong. It is denied in order to maintain respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination. . . .

Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. . . . To declare that in the administration of the criminal law the end justifies the means—to declare that the government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face.

*Olmstead v. United States*, 277 U.S. 438, 484, 48 S.Ct. 564, 574–75, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting) (footnote omitted).