**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

EDWARD POWELL HOLLOMAN, JR.,
*Defendant-Appellant.*

No. 99-4391

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

EDWARD POWELL HOLLOMAN, JR.,
a/k/a Edward Paul Holloman, a/k/a
Edward P. Holloman, a/k/a Eddie
Powell Holloman, a/k/a Alfred
Woods, a/k/a Too Big Holloman,
a/k/a Chi Holloman, a/k/a Shy
Holloman,
*Defendant-Appellant.*

No. 99-4392

Appeals from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CR-98-67, CR-98-14)

Submitted: November 28, 2000

Decided: December 29, 2000

Before WILKINS, LUTTIG, and TRAXLER, Circuit Judges.

Affirmed in part and dismissed in part by unpublished per curiam opinion.

---

## COUNSEL

C. Randall Lowe, TATE, LOWE & ROWLETT, Abingdon, Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney, S. Randall Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Edward Powell Holloman, Jr., was convicted by a jury of four counts of distribution of cocaine base (crack) in violation of 21 U.S.C.A. § 841(a), (b)(1)(C) (West 1999), and one count of distribution of cocaine base (crack) in violation of § 841(a), (b)(1)(B). He also pled guilty to escape in violation of 18 U.S.C. § 751(a) (1994). Holloman challenges his conviction and his sentence. We affirm.

In early 1998, Holloman sold crack five times to Chad Walker, a confidential informant. Walker was under surveillance during each of the charged transactions, and all but one of them was recorded. Walker testified at Holloman's trial. While Holloman was in custody after his arrest, he wrote a letter to President Clinton in which he explained how he came to begin "an ugly path of drug selling," and stated that he accepted "full responsibility for [his] crimes." A short time later, Holloman escaped from custody. He was recaptured a month later and pled guilty to escape before his trial on the drug charges.

Before trial, Holloman sought to exclude Walker's testimony on two grounds: (1) that his testimony would be inherently unreliable because he had been paid a contingency fee for drug purchases and testimony, and (2) that his testimony would violate the federal bribery statute because he was a paid informant. In the same motion, Holloman argued that Walker should not be permitted to testify that he had seen Holloman carry a gun because such testimony would be more prejudicial than probative. Holloman also sought to exclude the letter to President Clinton on the ground that it did not contain a specific admission to any of the charged offenses and would be more prejudicial than probative. Finally, Holloman sought to exclude evidence of his escape, arguing that his escape was "likely" prompted by a desire to be with his family after he learned that he was HIV positive. The district court denied these motions. During the trial, the tape recordings of Walker's drug purchases from Holloman were played for the jury. The sound quality was not good and a defense witness, a volunteer prison minister, testified that he did not recognize Holloman's voice on the tapes. The district court denied Holloman's motion for acquittal at trial, and his post-conviction motion for acquittal.

Holloman first contests the district court's decision to admit Walker's testimony (particularly his testimony that Holloman carried a gun). In the district court, Holloman relied in part on the reasoning in *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998), *rev'd en banc*, 165 F.3d 1297 (10th Cir.), *cert. denied*, 527 U.S. 1024 (1999). The original panel opinion in *Singleton* had been vacated when the district court considered Holloman's motion, and has since been repudiated by the Tenth Circuit in its en banc decision.* The district court found that the fee arrangement did not render Walker's testimony inadmissible, and declined to follow *Singleton*. The district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. McMillon*, 14 F.3d 948, 955 (4th Cir. 1994).

Holloman contends that Walker was paid a contingency fee to buy drugs from him and for his subsequent testimony, which rendered his testimony inherently unreliable and thus inadmissible. Holloman

---

*See also United States v. Richardson*, 195 F.3d 192, 197 (4th Cir. 1999) (finding that federal bribery statute not violated by offers of immunity or leniency to co-conspirators).

relies on *United States v. Crim*, 340 F.2d 989, 990 (4th Cir. 1965). In that case, this court considered whether the testimony of two undercover agents should have been excluded under *Williamson v. United States*, 311 F.2d 441 (5th Cir. 1962) (holding that testimony of informer hired on contingent fee basis not admissible in absence of explanation for use of such system of obtaining testimony), and decided that the prerequisites set out in *Williamson* were met. *Crim*, 340 F.2d at 990 (citing *Hill v. United States*, 328 F.2d 988, 989 (5th Cir. 1964)). *Williamson* has since been expressly overruled by the Fifth Circuit, which held in 1987 that the credibility of both paid informers and witnesses who are promised a reduced sentence for their cooperation should be a matter for the jury to evaluate. *United States v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (en banc) (citing *Hoffa v. United States*, 385 U.S. 293, 311-12 (1966)).

Moreover, Walker was not paid to secure Holloman's conviction. Walker testified that he was paid $100 for each purchase of drugs that amounted to a felony offense. There was no evidence that he was paid to obtain evidence against Holloman specifically, or that he was paid for his testimony against Holloman. Moreover, an officer of the Bristol Police Department testified that narcotics investigators could not buy drugs at the apartment complex because they were too well-known. Thus, the government established its need for the assistance of a paid informant. Consequently, we find that the district court did not abuse its discretion in admitting Walker's testimony.

Holloman separately challenges the admission of Walker's testimony that Holloman carried a gun during the last drug sale as more prejudicial than probative. He argues that this evidence should have been excluded under Rule 403 of the Federal Rules of Evidence because its probative value was outweighed by the danger of unfair prejudice. When the issue was raised again in the midst of Holloman's trial, the district court found that the evidence was relevant and admissible, but did not specifically address Holloman's previous contention that the evidence could be unfairly prejudicial. We find no abuse of discretion, however, because the testimony that Holloman carried a firearm during one drug sale was not the kind of evidence which might incite a jury to render an irrational verdict based on emotion. *See United States v. Queen*, 132 F.3d 991, 994, 998 (4th Cir. 1997) (evidence not excludable under Rule 403 when it would not

"invoke emotion in place of reason as a decisionmaking mechanism.").

We find next that the district court did not abuse its discretion in finding that Holloman's letter to President Clinton had probative value in that it could be read as an admission to the distributions charged in the indictment, and that, even if it were taken as referring to past drug distributions, it was evidence of prior bad acts which was admissible under Rule 404(b), and was not unduly prejudicial.

Holloman also challenges the district court's admission of evidence of his escape. Evidence of an accused's flight, including escape from custody, is generally admissible as an indication of guilt. *United States v. Murphy*, 996 F.2d 94, 96 (5th Cir. 1993). Evidence of flight is problematic only when the circumstances are such that a consciousness of guilt cannot be inferred with confidence from the fact of flight, as when it is not clear that the defendant actually fled, or when he fled in response to an investigation of an unrelated crime, or when it is not clear that he was aware when he fled that he was about to be charged with a crime. *United States v. Beahm*, 664 F.2d 414, 419-20 (4th Cir. 1981); *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977). Here, Holloman did not introduce any evidence that he escaped from custody for any reason other than to avoid prosecution. His attorney merely argued that it was "as likely" that his flight indicated that he wanted to be with his family after he was diagnosed HIV positive as it was an indication of guilt. The district court thus did not abuse its discretion in deciding that evidence of Holloman's escape was admissible.

Holloman contends that the government's evidence was insufficient because it depended entirely on Walker's testimony. Only Walker identified him as the person whose voice was heard on the tape making the drug sale, and there was no corroborating evidence such as fingerprints or testimony from other persons present during the sale. A conviction must be sustained if, taking the view most favorable to the government, there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942). Here, given that the jury found Walker a credible witness, his testimony provided the substantial evidence necessary to support the conviction.

Next, Holloman argues that the district court erred in sentencing him as a career offender because his prior convictions for armed robbery were part of a common scheme or plan. To be sentenced as a career offender, a defendant must be at least eighteen, the instant offense must be a crime of violence or a serious drug offense, and the defendant must have two prior felony convictions for either a crime of violence or a serious drug offense which are counted separately under § 4A1.1(a), (b), or (c). USSG § 4B1.2(c). Sentences for prior offenses that were not separated by an intervening arrest are considered "related cases" and counted as one sentence, *see* USSG § 4A1.2(a)(2), if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing. USSG § 4A1.2, comment. (n.3).

Holloman argues that the three prior armed robbery convictions set out in paragraphs 40, 41, and 42 of the presentence report should have been treated as related cases because they were part of a common scheme or plan and because he thought the six-year concurrent sentences he received were to be consolidated into a single six-year term.

The factors identified by this court as relevant to a determination of whether offenses are part of a single common scheme or plan are:

> [W]hether the crimes were committed within a short period of time, in close geographic proximity, involved the same substantive offense, were directed at a common victim, were solved during the course of a single criminal investigation, shared a similar *modus operandi*, were animated by the same motive, and were tried and sentenced separately only because of an accident of geography.

*Breckenridge*, 93 F.3d at 138. Not all these factors must be present for there to be a common scheme or plan, nor does the presence of a few of them require that finding. *Id.* Temporal and geographic proximity are significant, but not determinative. *Id.* The same is true of a common motive, or a single police investigation (unless it was a targeted investigation). *Id.* (citing *United States v. Fonville*, 5 F.3d 781, 784-85 (4th Cir. 1993)). The fact that the defendant received concurrent sentences does not make separate offenses related, but the fact

that the offenses were substantively similar may be significant. *Id.* (citing *Fonville*).

In Holloman's case, the three robberies were committed in the same city and involved the same substantive offense, the same participants, and a similar modus operandi—the robbers entered the store with a weapon (firearms in two robberies, a hammer in the third), threatened the store employees and smashed the jewelry cases. Holloman was charged with all three robberies after his arrest in November 1988, indicating that the crimes were solved in one investigation, although it is not clear how the investigation proceeded.

However, the robberies had different victims and, most importantly, the first robbery was not close in time to the last two robberies. The first robbery was committed a year before the others. The last two robberies were committed two weeks apart. There was no evidence of any common motive other than monetary gain. The district court found that all three robberies were "crimes of opportunity," not connected by a common scheme or plan. We agree that the 1987 robbery was too distant from the last two robberies for the district court to find that all three robberies were part of a common scheme or plan. Thus, even if the last two robberies were viewed as connected by a common scheme or plan, Holloman still has two prior crimes of violence that were not related. Therefore, the district court did not err in sentencing him as a career offender.

Finally, Holloman contests the district court's decision not to depart under USSG § 4A1.3 because his criminal history category was overstated, or under § 5H1.4, because he is HIV positive. The district court's decision not to depart is not reviewable unless its decision is based on a mistaken belief that it lacks authority to depart. *United States v. Brock*, 108 F.3d 31, 33 (4th Cir. 1997). Here, the district court noted that it had authority to depart, but would not do so. Therefore, this issue is not properly raised on appeal.

We therefore affirm the conviction and sentence. We dismiss the portion of the appeal that contests the district court's decision not to depart. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART AND DISMISSED IN PART*