**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3588
_____

UNITED STATES OF AMERICA

v.

DANNY TOLENTINO,
a/k/a Dalmacio Tolentino,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cr-00484-002)
District Judge: Hon. William J. Martini
_____

Submitted under Third Circuit LAR 34.1(a)
June 22, 2012

Before: AMBRO, VANASKIE and ALDISERT, Circuit Judges

(Filed: July 5, 2012)
_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

In 2011 Dalmacio "Danny" Tolentino was found guilty of four drug trafficking

charges and was sentenced to thirty-eight months' incarceration and five years'

1

supervised release. He appeals from the United States District Court for the District of New Jersey's final judgment. Tolentino's basic contention is that the District Court failed to raise the outrageous government conduct defense *sua sponte*, and that its failure constituted a violation of Appellant's rights assured by the Due Process Clause.

Because we write primarily for the parties, who are familiar with the facts and the proceedings in this case, we will revisit them only briefly.

In early 2007 Luis Fernando Arcila Fajardo, the government's confidential informant, introduced himself to Tolentino, the Appellant, at Tolentino's barbershop in Passaic, New Jersey. Arcila told Tolentino that he could smuggle drugs through the Newark airport but that he did not have access to any drugs, soliciting Tolentino's help. The two continued to see each other regularly at the barbershop, but the first time Arcila ever recorded one of their conversations was a year-and-a-half later.

On June 25, 2009, Tolentino was charged with conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine, to which he pled guilty on November 13, 2009. Tolentino subsequently sought to withdraw his plea. On December 17, 2010, the District Court granted Tolentino's motion to withdraw. The government subsequently charged him with conspiring to import over five kilograms of cocaine, conspiring to distribute and possess with intent to distribute over five kilograms of cocaine, aiding in the importation of cocaine, and knowingly attempting to distribute and possess with intent to distribute over five kilograms of cocaine.

Tolentino's conviction was based largely on the testimony of, and recordings made by Arcila, the government's confidential informant. During one of the recorded conversations, which took place on the same block as the barbershop, Tolentino can be heard discussing potential prices and buyers for drugs. Arcila testified also that Tolentino

introduced him to "Willy," a person involved in the drug trafficking business who was able to purchase the drugs and arrange for their transport to the United States.

From 2004 until 2011, Arcila was paid $60,000 as compensation for his work as a confidential informant, $12,000 of which was for his work on Tolentino's case. Federal authorities have deferred Arcila's deportation seven times since 2004, and have taken steps to prevent his mother and brother from being deported as well. The Department of Homeland Security has also sponsored an S-Visa application for Arcila, which will make it possible for him to gain permanent resident status in the United States, notwithstanding his past felony convictions.

Tolentino presented a theory of entrapment at trial, which the jury rejected, finding him guilty on four drug trafficking counts. Tolentino moved for a judgment of acquittal, again arguing that he was entrapped. The Court denied this motion and eventually sentenced him to 38 months' imprisonment. Tolentino timely appealed.[1]

## II.

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review on whether Tolentino waived the defense of outrageous government conduct at trial. See Rule 12 (e), Federal Rules of Criminal Procedure; United States v. Pitt, 193 F.3d 751, 760-761 (3d Cir. 1999).  We review unraised claims for plain error. See Rule 52(b); Pitt, 193 F.3d at 760.

## III.

We conclude that Tolentino waived this defense of outrageous government conduct by not raising it before his trial began. Because Tolentino's claim would have

---

[1] Tolentino did not raise the outrageous government conduct defense before or during his trial.

3

also failed on its merits, the District Court did not err when it failed to raise this defense *sua sponte* and dismiss Tolentino's charges. We will therefore affirm the District Court's judgment.

## A.

An outrageous government conduct defense "examines whether a defendant's due process rights have been violated because the government created the crime for the sole purpose of obtaining a conviction." Pitt, 193 F.3d at 759-760. The defense is "based on an alleged defect in the institution of the prosecution itself," and is thus covered under Rule 12(b) of the Federal Rules of Criminal Procedure. Id. at 760. A defendant waives the ability to raise an outrageous government conduct defense if it is not raised before the trial begins. Because it is undisputed that Tolentino failed to raise this defense prior to his trial, we hold that he waived his right to bring it before us on appeal.

Rule 12(e) contains an excuse of waiver if the defendant can show "good cause" for failing to make a timely 12(b) motion. United States v. Rose, 538 F.3d 175, 184-185. For example, we have held that a defendant did not waive his ability to raise an outrageous government conduct claim on appeal because "it may have been too late for [him] to make a Rule 12(b) motion when [he was] given the information [relating to the claim]." United States v. Gonzales, 927 F.2d 139, 144 (3d Cir. 1991). But an excuse of waiver should be granted only if "compliance with the procedural requirement [was] virtually impossible." Pitt, 193 F.3d at 760.

Tolentino has asserted no justification as to why he failed to raise this defense in a timely manner. Indeed, he provided the same facts here on appeal as he did for his

4

entrapment defense at trial. Tolentino has not only failed to address why it was impossible for him to file a 12(b) motion, but his brief fails to even argue that his wavier deserves excuse. Tolentino thus may not now use the waived claim as an end-run around his failed entrapment defense.

B.

Even if this defense were not waived, it would nonetheless fail. Although the defense of outrageous government conduct is "often invoked by defendants, [it] is rarely applied by courts." United States v. Voigt, 89 F.3d 1050, 1065 (3d Cir. 1996) (citation omitted). "The pertinent question is whether the government's conduct was so outrageous or shocking that it amounted to a due process violation." United States v. Christie, 624 F.3d 558, 573(3d Cir. 2010) (citation omitted). "[C]ourts have experienced considerable difficulty in translating 'outrageous misconduct' into a defined set of behavioral norms," United States v. Nolan-Cooper, 155 F.3d 221, 230 (3d Cir. 1998) (citation omitted), but it is generally "reserved for only the most egregious circumstances," United States v. Mosley, 965 F.2d 906, 910 (3d Cir. 1992). "[T]he challenged conduct must be shocking, outrageous, and clearly intolerable," thus "violat[ing] our sense of fundamental fairness or shock[ing] the universal sense of justice." Pitt, 193 F.3d at 761-762 (citing United States v. Russell, 411 U.S. 423, 432 (1973)). "[W]e repeatedly have noted that we are 'extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause.'" United States v. Hoffecker, 530 F.3d 137, 154 (3d Cir. 2008) (quoting Voigt, 89 F.3d at 1065).

5

Tolentino contends that the government's conduct was outrageous because it incentivized its informant without supervising him, thereby allowing Arcila to persuade Tolentino to join a drug conspiracy. Even if there may have been something "shocking" about the incentives the government gave Arcila, Christie, 624 F.3d at 573, such an allegation would impugn the credibility of Arcila, not the behavior of the government, see Gonzales, 927 F.2d at 144 ("'[T]he method of payment is properly a matter for the jury to consider in weighing the credibility of the informant.'" (quoting United States v. Hodge, 594 F.2d 1163, 1167 (7th Cir. 1979))). During his trial, Tolentino had ample opportunity to cross-examine both Arcila and his supervisor regarding the informant's incentives and motivations. Hence, it is not our place to question the jury's finding that Arcila's testimony was credible.

Tolentino's contention that the government acted outrageously by not supervising its informant is also without merit. We have held that a lack of informant supervision does not constitute outrageous conduct. See Christie, 624 F.3d at 564-565 (holding that the government does not act outrageously in its supervision of a confidential informant even if that informant violates federal law by running a child pornography website). Arcila's supervisor testified, moreover, that the informant reported back "constantly" with status updates. App. 00055. He testified also that he was aware of Arcila's contact with Tolentino since the "beginning part of the summer of 2007." Id. Although the lack of recordings during the first year-and-a-half of Arcila and Tolentino's acquaintanceship is troubling, as the District Court noted, the Appellant "points to no evidence showing

that [Arcila] did anything more than provide Defendant with an opportunity to commit a crime." App. 00428.

In United States v. Lakhani, 480 F.3d 171 (3d Cir. 2007), we held that a defendant had not met the rigorous standard of outrageous government conduct because he "used his *own* knowledge" of the illegal activity, and because "there [was] much to suggest" that the defendant was predisposed to criminal activity. Id. at 182. Unfortunately for Tolentino, his introduction of the confidential informant to "Willy," someone the District Court found to be "clearly . . . involved in . . . the illegal business of importing drugs," Supp. App. 458, established both that he used his own knowledge to further the drug trafficking conspiracy and suggests that he had a predisposition to commit the crime. Because Tolentino could not have met the requirements of the outrageous government conduct defense, the District Court did not err when it failed to raise it *sua sponte* during his trial.

* * * * *

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be AFFIRMED.