**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Gabriel Youssef RIZK, and Hanna Elias Ibrahim Mina, Defendants-Appellants.**

**No. 86-1075.**

United States Court of Appeals, Fifth Circuit.

Nov. 23, 1987.

Michael E. Tigar, Austin, Tex. (Court-appointed), for defendants-appellants.

Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Robert J. Erickson, Deputy Chief, Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before RUBIN and EDWARDS,* Circuit Judges.**

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.

In this case, defendants-appellants Rizk and Mina appeal from conviction of two counts of possession with intent to distribute heroin [1] in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1 R.A. 245–46). The district judge before whom these charges were tried conducted a pre-trial hearing and then denied appellants' motions to suppress the physical evidence. Thereafter appellants were tried to a jury and each was convicted on both counts stated above, subsequently being sentenced to concurrent 20-year terms of imprisonment plus a five-year special parole term on Count Two.

Our review of this record shows that there is no possible doubt about the participation of both of these parties in the offenses referred to above. This, however, is only the preface to our concern with this appeal. The convictions are vigorously attacked by defendants claiming (1) entrapment as a matter of law by the government's employment of an informer on "a contingent fee basis," (2) the Drug Enforcement Agency's "overinvolvement in the alleged conspiracy which amounted to entrapment as a matter of law," (3) the failure of the government to control an informant, one Schbley, in his activities particularly in taping the conversations of defendant Rizk, (4) the subsequent "improper publication of these (tapes) to the jury," and finally, (5) that "the evidence is insufficient to sustain the convictions."

This last assertion is the easiest to deal with. Our acquaintance with the briefs and record in this case shows that the convictions of Rizk and Mina were supported by overwhelming evidence and there is no doubt in our minds that affirmance of the jury verdict on that issue is clearly called for. The reasons for our denying any lack of sufficient evidence will become obvious in the balance of this opinion.

We turn now to the other appellate issues. The evidence contained in this record allowed the jury to conclude that as a result of planning by Rizk, heroin was imported into the United States, transported from Lebanon to Texas by appellant Mina to be sold by informant Schbley and defendant Rizk. The heroin was taken first to Houston and then to Austin, Texas, where Schbley was to take delivery of it. After some number of conversations by telephone about where the transfer was to take place, Schbley, the informant, went to the Marriott Hotel in Austin and rented a room. There Rizk and Schbley demolished Mina's briefcase and suitcase in order to remove plastic packets of heroin hidden in the framework of each. The actual arrests and seizures of the heroin took place in the

* Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

** Due to his death on October 19, 1987, Judge Hill did not complete his participation in this decision. The case is therefore decided by a quorum. 28 U.S.C. 46(d).

1. Heroin: a bitter, white crystalline narcotic made from morphine but more potent than morphine, and because of its addictive properties prohibited by law from being manufactured or imported into the United States and many other countries. Webster's Third International Dictionary.

parking lot outside the Marriott Hotel in Austin.

At the trial of this case both Rizk and Mina testified in their own defense. Rizk admitted participation in the smuggling venture but maintained that he had been illegally entrapped by Schbley. Mina admitted carrying the luggage containing the heroin from Lebanon to the United States but denied that he had known that the luggage contained illegal drugs.

The fact that Schbley did not disclose to defendants that he was engaged in cooperating with the government does not, of course, prove illegal entrapment. Mina's claim that he carried the luggage containing the heroin from Lebanon to the United States and thence to Houston and Austin, Texas in complete ignorance of the nature of its contents was submitted to the jury. We believe that the jury verdict must be read as rejection of these implausible arguments.

While high fees for informants are suspect, see *United States v. Gray,* 626 F.2d 494, 499 (5th Cir.1980), and *United States v. Garcia,* 528 F.2d 580, 587 (5th Cir.1976), such fees are not held to require reversal. In this case Schbley was paid $15,000 for his services. This payment was made before the trial.

Turning now to other purely legal arguments advanced on behalf of the defendants by able court-appointed counsel, Mr. Michael E. Tigar, we deal first with defendants' claim of entrapment and then with the assertion that the "contingent fee arrangement" in this case motivated the commission of the crimes here involved. And finally, we address the contention that the translations of taped conversations between the conspirators were so unreliable that their admission violated due process.

Defendants' claim of entrapment as a matter of law is defeated by the evidence, which shows that Rizk suggested the importation of this heroin and was an active participant in the illegal enterprise to its conclusion. Mina, in his testimony, admitted carrying the luggage containing heroin into the United States, but he denied knowing what the luggage contained. This denial is implausible on its face but it also was submitted to and rejected by the jury.

As to the "contingent fee arrangement" claim, informant Schbley did receive a fee. The fee was $15,000. This was paid, however, prior to trial so that Schbley's testimony was not given with a future financial motive at stake. We find no error in this payment.

The employment of an undercover agent to penetrate a drug conspiracy is a lawful practice. The testimony of an informant to whom the government has promised a fee is admissible if the government has made a complete and timely disclosure of the fee arrangement to the accused; the accused has had adequate opportunity to cross-examine the informant and government agents about the fee arrangement; and the trial court, in instructing the jury, has pointed out the suspect credibility of a fact witness who has been compensated for his testimony. *United States v. Cervantes-Pacheco,* 826 F.2d 310, 315–16 (5th Cir.1987) (en banc). So long as these rules designed to protect against abuses have not been violated, it is up to the jury to evaluate the credibility of the compensated witness. *Id.*

Rizk contends that the disclosure of the arrangements made with the informant did not comply with the *Cervantes-Pacheco* requirements because it was not made in pretrial discovery. It is apparent from the record, however, that by the time of trial, Rizk's trial counsel had all of the pertinent information and extensively cross-examined the informant on the relevant issues. Although accorded the opportunity, trial counsel did not elect to cross-examine DEA Agent Stone concerning the government's contingent fee arrangement with the informant. Indeed, when the prosecutor inquired on direct examination into the matter of the payments to the informant, Rizk's trial counsel objected to the inquiry on grounds of relevancy. Because the record contains evidence showing that the *Cervantes-Pacheco* requirements were ob-

served, Schbley's testimony was properly admitted for the jury's consideration.

As to the transcript of intercepted conversations, the district judge who heard this case gave the jury the following instruction:

> Ladies and Gentlemen of the Jury as you have just heard, Exhibit 82–A has been identified as a typewritten transcript of the oral conversation which can be heard on the videotape recording, which has been received in evidence as Exhibit 82. The transcript purports to identify the speakers engaged in such conversation.
>
> I have admitted the transcript for the limited and secondary purpose of aiding you in following the content of the conversation as you listened to the tape recording and also to aid you in identifying the speakers.
>
> However, you are specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation, or the identity of the speakers is entirely for you to determine based upon your own evaluation of the testimony you have heard concerning the preparation of the transcript and from your own examination of the transcript in relation to your hearing the videotape recording itself as the primary evidence of its own contents, and if you should determine that the transcript is in any respect incorrect, unreliable you should disregard it to that extent.

Obviously the jury found the transcript to be substantially correct.

The judgments of conviction are AFFIRMED.