869 F.2d 1494
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mehrdad AMINI-ARYA, A.K.A. Michael Amini, Defendant-Appellant.
 No. 87-5784.
 United States Court of Appeals, Sixth Circuit.
 March 14, 1989.
 
 Before KRUPANSKY and WELLFORD, Circuit Judges and CHARLES W. JOINER*, Senior District Judge.
 PER CURIAM.
 
 
 1
 The appellant in this case, Mehrdad Amini-Arya, a.k.a. Michael Amini, (Amini), an Iranian, was charged with involvement in a cocaine distribution operation in Los Angeles, California and Louisville, Kentucky. Shahram Bahadori, an undercover informant for the Drug Enforcement Agency (DEA), introduced DEA officer Kelly Snyder to Amini at the Cafe Rodeo in Beverly Hills. Bahadori and "an individual known by the name of Biglar,"[1] who apparently was Amini's employer (and a cocaine supplier), were also present at this meeting. Snyder was posing as a large buyer of cocaine, and he testified that the discussions at the restaurant involved the purchase of a number of kilograms of cocaine. Bahadori served as translator but did not participate in the transactions.[2] Snyder considered Biglar to be the cocaine supplier, but negotiated solely with Amini. In order to "build trust," Snyder arranged for a small initial purchase of $12,800 worth of cocaine before larger transactions were to take place. After the initial meeting, Snyder and Amini spoke several times on the phone concerning delays in the first delivery.
 
 
 2
 After these negotiations took place, Snyder was recalled to Kentucky, and another DEA agent, Kay LaMoreaux, was substituted to receive the cocaine. LaMoreaux posed as Snyder's girlfriend. Amini was then told that all future transactions were to go through another undercover agent, Price, who pretended to be an associate of Snyder named "Reggie."
 
 
 3
 A few days later, LaMoreaux and Bahadori met with Amini at the same location in Beverly Hills. The meeting was arranged so that Amini could effect the prearranged delivery of cocaine to LaMoreaux. When LaMoreaux appeared at the cafe at the designated time, Amini did not have the cocaine. She then left with Bahadori and told Amini to call her at her hotel when he obtained the cocaine. Later, Amini called LaMoreaux and acknowledged that he had the cocaine.
 
 
 4
 According to LaMoreaux, Amini seemed to know a great deal about drug "terminology."[3] Amini boasted about his access to cocaine, and during that evening he brought the package of cocaine to LaMoreaux's hotel. Before giving him the money, LaMoreaux took a sample of the cocaine and conducted a field test, which proved positive for cocaine (it later tested as 94% pure). LaMoreaux then questioned Amini about the weight of the cocaine. Amini replied that the cocaine was all there and if it wasn't, he would return all of her money.
 
 
 5
 Several months later, Amini talked with Agents Snyder and Price about the delivery of a much larger quantity of cocaine, but complained about delays he was experiencing in obtaining delivery. However, Amini did send one-fourth pound of cocaine to Louisville via Bahadori. Snyder called Amini to confirm that he had sent the drugs. This delivery was considered to be a "free sample."
 
 
 6
 During one conversation with Amini, Price accused Amini of stalling and told him that he was going to buy drugs in Detroit. Amini responded that Price should not go through with the Detroit purchase because he would receive the drugs at the agreed price. Apparently worried that Price would find another source, Amini told Price that he would transport the cocaine Snyder wanted to purchase directly to Louisville himself.
 
 
 7
 After working out the agreed deal, Amini and Bahadori flew to Louisville on September 12, 1984 with two kilograms of cocaine in Amini's suitcase. When he exited the plane, Amini was immediately confronted by a number of police officers, one of whom Amini asserts had a weapon in hand. According to Snyder, DEA agents matched the ticket stub in Amini's possession with that on the suitcase and transported both to Snyder's DEA office. At some point, Agent Snyder read Amini his Miranda rights from a DEA card.[4] Once at the DEA office, Amini cooperated fully.
 
 
 8
 The events surrounding Amini's arrest are controverted. Snyder testified that Amini was handcuffed when arrested at the airport, and at some point, a pat-down search of the defendant was conducted. Snyder also indicated that Amini identified his own suitcase while at the airport. He testified that Amini, while in the DEA office, verbally consented to a search of his suitcase, but in any event, no written consent was obtained. Snyder admitted that he had time to obtain a search warrant, but chose not to do so. Snyder had, however, obtained an arrest warrant from Judge Ballantine. Amini disagreed with Snyder's version of events; he testified that he did not identify his suitcase at the airport, and claimed that he was not given advice or warning concerning a search of his luggage. Amini said that "the bag itself was mine. Not the contents, but the bag." Despite Amini's protestations that the suitcase was empty, DEA agents found the two kilograms of cocaine in the suitcase.
 
 
 9
 As part of his later efforts to cooperate with the DEA agents, Amini told Snyder that Biglar had supplied the one-half pound of cocaine he had earlier delivered. Amini also gave Snyder the names of the suppliers for the quarter pound "sample" and the two kilograms of cocaine found in his suitcase. Amini later returned to Los Angeles to be of further assistance to the DEA in an effort to obtain evidence against other alleged drug dealers contacted by Bahadori.
 
 
 10
 Amini was indicted on two counts. Count one charged that as part of the conspiracy, Amini and two others would obtain cocaine in California and distribute it, or cause it to be distributed, in the Western District of Kentucky. Count two charged Amini with possession with intent to distribute two kilograms of cocaine in violation of 21 U.S.C. Sec. 841(a)(1).
 
 
 11
 Amini claimed at trial that he believed Bahadori was a DEA or government agent, having been identified as such by another Iranian associate. He also stated that Bahadori told him that he wanted to "bust Biglar." Amini stated that he was somewhat disposed to help Bahadori because Biglar owed him $20,000.
 
 
 12
 Evidence presented at trial indicated that Amini had distributed cocaine while a student at the University of Southern California, well prior to his arrest in this case. In addition, Zartoshty, the man who introduced Bahadori to Amini, told Agent Price that he had seen Amini distribute cocaine at a party and that Amini had obtained cocaine for him through Biglar late one evening. Finally, Hormoz Hezar, a business partner of Biglar, testified that in the summer of 1984 he too purchased cocaine from Amini.
 
 
 13
 Amini claimed that he and Biglar were "targets" of Bahadori's investigation. However, the evidence showed that Bahadori was sent to California at the request of the Los Angeles Division of the DEA in a totally unrelated matter. Bahadori worked in the Iranian community generally, and was "to report all matter of things which might be of interest to the DEA." Agent Snyder testified that Bahadori was a full-time, paid informant with a salary and expenses. He usually received a reward at the close of a successful investigation, but this reward was generally paid even if the investigation proved unsuccessful. DEA testimony was that there was no set standard for the reward system, and that the amount paid Bahadori depended on the circumstances of the case.
 
 
 14
 The jury found Amini guilty on both counts, and he now appeals. The appellant denies any valid consent to search his suitcase, and argues that his motion to suppress the cocaine found therein should have been granted. Following a hearing on the motion, the district judge stated that Agent Kelly's testimony "is far more credible than that of the defendant" on the issue of consent, and therefore denied the motion to suppress.
 
 
 15
 The voluntariness of consent to search is an issue of fact to be determined by the trial court, and such findings are subject to the clearly erroneous standard. United States v. Scott, 578 F.2d 1186, 1189 (6th Cir.), cert. denied, 439 U.S. 870 (1978). "No single fact is determinative of the voluntariness of a consent to search, but rather, voluntariness is to be determined 'from the totality of all the circumstances.' " 578 F.2d at 1189 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).
 
 
 16
 We believe the district court had ample evidence to support its decision to deny Amini's motion to suppress. Amini never contended that he was coerced to consent to a search of his luggage following his arrest. The only case appellant cites to support his position is United States v. McCaleb, 552 F.2d 717 (6th Cir.1977). We find this case to be inapposite on its facts because there the search was conducted pursuant to an unlawful arrest while the validity of Amini's arrest has not been challenged. The decision of the district court was not clearly erroneous, and we, therefore, do not disturb it. See United States v. Canales, 572 F.2d 1182, 1188 (6th Cir.1978).
 
 
 17
 The appellant also asserts that the indictment was based on information gathered by Shahram Bahadori on what he avers was an improper "contingent fee" arrangement, citing Williamson v. United States, 311 F.2d 441 (5th Cir.1962). Appellant fails to note that Williamson was overruled in United States v. Cervantes-Pacheco, 826 F.2d 310 (5th Cir.1987), cert. denied sub nom. Nelson v. United States, 108 S.Ct. 749 (1988). The clear weight of the evidence, in any event, indicates that Bahadori was not a "contingent fee" informant.
 
 
 18
 Payment of expenses, salary, or rewards to an undercover informant is not considered a "contingent fee" arrangement. See, e.g., United States v. Carcaise, 763 F.2d 1328, 1332 (11th Cir.1985); United States v. Gray, 626 F.2d 494, 499 (5th Cir.), cert. denied sub nom. Wright v. United States, 449 U.S. 1038 (1980); United States v. Garcia, 528 F.2d 580, 586-87 (5th Cir.), cert. denied sub nom. Sandoval v. United States, 426 U.S. 952 (1976). Payments to Bahadori were also asserted not to be based merely on the successful investigation and prosecution of his contacts. See United States v. Terrill, 835 F.2d 716 (8th Cir.1987); see also United States v. Rizk, 833 F.2d 523, 525 (5th Cir.1987), cert. denied, 109 S.Ct. 90 (1988). We accordingly find no merit in appellant's assertions in this respect.
 
 
 19
 Amini finally contends that the actions of Bahadori, as a government agent, constituted entrapment as a matter of law.[5] Although entrapment is usually a question of fact for the jury, a defendant who shows undisputed facts and testimony demonstrating a "patently clear" absence of disposition can make a claim of entrapment as a matter of law. United States v. Pennell, 737 F.2d 521, 534-35 (6th Cir.1984), cert. denied, 469 U.S. 1158 (1985).
 
 
 20
 The defense of entrapment focuses "on the intent or predisposition of the defendant to commit the crime." Hampton v. United States, 425 U.S. 484, 488 (1976) (quoting United States v. Russell, 411 U.S. 423, 429 (1973)); see also United States v. Johnson, 855 F.2d 299, 303 (6th Cir.1988). "It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." Russell, 411 U.S. at 436; see also United States v. Nelson, 847 F.2d 285, 287 (6th Cir.1988); Pennell, 737 F.2d at 534. Once the issue of predisposition is in dispute, "the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the offense." Johnson, 855 F.2d at 303 (citing United States v. McLernon, 746 F.2d 1098 (6th Cir.1984)).
 
 
 21
 Predisposition has been defined as "the defendant's state of mind before his initial exposure to government agents." McLernon, 746 F.2d at 112 (quoting United States v. Kaminski, 703 F.2d 1004, 1008 (7th Cir.1983)). Factors relevant in determining the defendant's state of mind include:
 
 
 22
 the character or reputation of defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.
 
 
 23
 McLernon, 746 F.2d at 1112 (quoting Kaminski, 703 F.2d at 1008). There is ample evidence from which the predisposition of Amini in this case could be found. See also United States v. Sissom, 861 F.2d 722 (6th Cir.1988).
 
 
 24
 For the reasons indicated, we find no reversible error and therefore AFFIRM the conviction of appellant Amini.
 
 
 
 *
 THE HONORABLE CHARLES W. JOINER, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 As described by Snyder in his testimony before the jury. Joint Appendix at 20
 
 
 [2]
 Biglar and Amini spoke in Iranian, and Bahadori was to "protect" Snyder by ensuring that the conversation between Biglar and Amini was translated to him properly. But, Snyder also stated that Amini spoke to him in English
 
 
 [3]
 Agents Snyder, LaMoreaux, and Price all testified that Amini appeared experienced with regard to drug dealing and was familiar with street/drug terminology and the practices of drug dealers
 
 
 [4]
 Amini told Snyder that he understood his rights and wanted to cooperate. Snyder testified that Amini seemed to understand English. It appears that Amini did indeed cooperate because he made an undercover phone call to Navid Ahmadi, one of his alleged suppliers and an indicted defendant in this case
 
 
 [5]
 Under the new standard enunciated in Mathews v. United States, 108 S.Ct. 883 (1988), a defendant need not admit all of the elements of the offense charged before he may assert an entrapment defense. Mathews is to be applied retroactively. United States v. Graham, 856 F.2d 756 (6th Cir.1988) (petition for cert. filed Nov. 8, 1988)