902 F.2d 1570
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David A. FLEMING (89-6047); Vernon A. Mullins (89-6073);
Michael S. Mullins (89-6074); Charles E. Tackett (89-6075);
Jeffrey Howard (89-6076); and Timothy Neal Howard
(89-6167), Defendants-Appellants.
 89-6047, 89-6073 to 89-6076 and 89-6167.
 United States Court of Appeals, Sixth Circuit.
 May 24, 1990.
 
 Before NATHANIEL R. JONES and KRUPANSKY, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Assigning numerous errors, the defendants appeal their jury convictions for receipt of stolen motor vehicles transported across state lines and possession with intent to sell such stolen motor vehicles and their parts. We affirm.
 
 I.
 
 2
 On October 24, 1987, Dennis Coleman, a private citizen, approached the Kentucky State Police with information concerning the whereabouts of certain mining equipment that had been stolen from him. Based upon affidavits by Coleman, two search warrants were obtained and executed, one for a property named Cann Potter Hollow and the other for a property referred to as Band Mill Hill. The Federal Bureau of Investigation (F.B.I.) was investigating reports of stolen vehicles in Letcher County, Kentucky. For reasons which the record does not make clear, the F.B.I. assisted Kentucky police in their search of the Cann Potter Hollow and Bank Mill Hill properties.
 
 
 3
 The search of the Cann Potter Hollow property turned up some of the mining equipment stolen from Coleman. The search of the Band Mill Hill property, owned by defendant Vernon Andrew Mullins, turned up numerous stolen trucks, equipment, and truck parts which were not the object of the search warrant but which subsequent investigation revealed had been reported stolen. The investigation also revealed that a number of the vehicles had had their identification numbers altered or removed and had been registered in the names of the co-defendants.
 
 
 4
 Defendant Tackett was arrested as he was driving a stolen tractor and pulling a stolen coal trailer off the Cann Potter Hollow property. Defendant David Fleming was welding a stolen truck at the time of the search. Timothy Neal Howard and Michael S. Mullins, Vernon Mullins' son, were present on the Band Mill Hill property during the search. Vernon Mullins hid in the woods with co-defendant Jeffrey Neal Howard and Russell Dean Hall. They fled the scene of the search in a stolen vehicle.
 
 
 5
 On February 22, 1989, a grand jury for the Eastern District of Kentucky returned a thirty-eight count indictment naming as defendants Vernon Andrew Mullins, Charles Edward Tackett, Timothy Neal Howard, Jeffrey Neal Howard, Michael S. Mullins, David A. Fleming and Russell Dean Hall. All defendants except Hall are parties to this appeal. The defendants were charged under 18 U.S.C. Sec. 371 (1988) with conspiracy to: receive, possess, conceal, store, barter, sell, and dispose of stolen motor vehicles which had crossed state lines, in violation of 18 U.S.C. Sec. 2312; 2) receive, possess, conceal, store, barter, sell and dispose of stolen goods, wares and merchandise, valued at $5,000 or more, which had crossed state lines, in violation of 18 U.S.C. Sec. 2315; 3) buy, receive, possess and obtain control of, with intent to sell or dispose of, motor vehicles and motor vehicle parts, with knowledge that the identification numbers had been removed or altered, in violation of 18 U.S.C. Sec. 2321; and 4) knowingly removing or tampering with motor vehicle identification numbers in violation of 18 U.S.C. Sec. 511(a).
 
 
 6
 At trial, the government's principal witness was Charles Wayne Trotter, an alleged accomplice of the defendants. Trotter described his involvement in the interstate "chop shop" headed by Vernon Mullins, in which vehicles were stolen in various states for the purpose of disguising and reselling them or dismantling them and selling their parts. Trotter began working for Vernon Mullins in McRoberts, Kentucky in 1982. He was employed as a "bad ass" who would rough persons up for failing to pay bills or for revealing any information about the conspiracy. He testified about how the chop shop operation worked: Tackett or Vernon Mullins would receive an order for a vehicle or parts and then one of the alleged conspiracy members would steal a car that fit the description of the order placed. All defendants except Michael Mullins and David Fleming stole trucks. Some defendants operated as interference when police were within the vicinity of a stolen vehicle. All defendants assisted in the loading and unloading of stolen parts. Each defendant, with the exception of David Fleming, received a certain amount of the proceeds from each car that was stolen and resold.
 
 II.
 
 7
 On appeal, Defendants Charles Tackett, Jeffrey Howard and Timothy Neal Howard contend that the evidence seized from Vernon Mullin's property, Band Mill Hill, was illegally obtained because: 1) the search warrant affidavit did not contain reliable information which raised a fair probability that evidence of a crime would be found, see United States v. Pelham, 801 F.2d 875, 877-78 (6th Cir.1986), cert. denied, 479 U.S. 1092 (1987), and 2) the F.B.I. had no probable cause to search for stolen trucks on Vernon Mullins' property but nevertheless "piggybacked" on the state search warrant that was issued, thereby conducting a warrantless search under the guise of assisting Kentucky State Police.
 
 
 8
 In a March 3, 1989 order, the district court required that all pretrial motions be filed by March 21, 1989. Defendants Charles Tackett, Michael Mullins, and David Fleming filed timely motions to suppress evidence. However, Defendants Vernon Mullins, Timothy Neil Howard and Jeffrey Neil Howard filed a suppression motion on April 4, 1989, outside the time set by the trial court. Because their motions were filed untimely, these defendants waived appellate review of the trial court's disposition of their motion to suppress evidence. Fed.R.Crim.P. 12(b) provides:
 
 
 9
 Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion.... The following must be raised prior to trial:
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 (3) Motions to suppress evidence.
 
 
 13
 The Sixth Circuit's application of Rule 12(b) is exacting: "[F]ailure to raise 12(b) motions in a timely fashion precludes appellate review.... The issues raised in an untimely Rule 12(b) motion are waived, even though the district court rules on the merits of the motion despite its untimeliness." United States v. Oldfield, 859 F.2d 392, 396 (6th Cir.1988) (citations omitted). Thus, even though the district court ruled on the merits of Defendants Vernon Mullins, Timothy Neil Howard, and Jeffrey Neil Howard's suppression motion, the motion's untimeliness precludes appellate review.
 
 
 14
 Defendant Charles Tackett filed a timely motion to suppress evidence seized from the property of Vernon Mullins. Of the defendants who timely filed motions to suppress, Tackett is the only one to raise the suppression issue on appeal. The district court concluded that only Vernon Andrew Mullins had standing to move to suppress the evidence seized from his property because only he, as the property's owner, had a legitimate expectation of privacy in Band Mill Hill. We affirm this ruling on appeal. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas v. Illinois, 439 U.S. 128, 134 (1978). Tackett does not claim a possessory interest of any sort in the Band Mill Hill property. Moreover, his arrest took place on the Cann Potter Hollow property, not on Vernon Mullins' premises. In this regard, Tackett cannot even claim a legitimate expectation of privacy in Vernon Mullins' property by virtue of his presence thereon at the time of the search. Cf. United States v. Salvucci, 448 U.S. 83, 92 (1980) (rejecting the latter argument). Accordingly, we affirm the trial court's denial of Tackett's motion to suppress evidence.
 
 III.
 
 15
 Over the defendants' objections, the trial court admitted into evidence a 1980 felony conviction of Vernon Mullins for receiving stolen property and a 1965 felony conviction of Vernon Mullins for violations of the Dyer Act, 18 U.S.C. Secs. 2312-13. The court also admitted into evidence a 1977 conviction of Charles Tackett for altering motor vehicle identification numbers. These prior felony convictions were admitted pursuant to Fed.R.Evid. 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Because the government was required to show that the defendants knew the motor vehicles and car parts were stolen, see 18 U.S.C. Secs. 2312 and 2315, it introduced the prior convictions against Vernon Mullins and Tackett in order to prove the lack of mistake or accident on these defendants' part.
 
 
 16
 On appeal, Vernon Mullins and Tackett argue that the prior convictions were too remote to be probative of their intent with respect to a conspiracy that existed in 1987. They also argue that the government prejudicially commented on the prior convictions during oral argument when counsel stated:
 
 
 17
 And these men are pros, ladies and gentlemen. As the evidence shows you, they have done it before, they knew how to do it, and I submit to you they did it again.
 
 
 18
 (J.App. for Nos. 89-6073/75/76/67). Although the prior convictions were not introduced against them, Defendants Michael Mullins and David Fleming claim to have been prejudiced by this evidence's "spill over" effect.
 
 
 19
 We review the trial court's evidentiary rulings for abuse of discretion. Martin v. Weaver, 666 F.2d 1013, 1020 (6th Cir.1981), cert. denied, 456 U.S. 962 (1982). Generally, an underlying prerequisite for the admission of prior acts is that they be probative of an element of a crime charged and be substantially similar to and proximate in time to the offense charged. United States v. Ismail, 756 F.2d 1253 (6th Cir.1985). Courts then engage in a two-step analysis to determine the admissibility of prior bad acts. First, the evidence must serve a permissible purpose, such as one specified by the rule itself. Next, a court must determine whether the probative value of the evidence is outweighed by its potential prejudice to the defendants. United States v. Vance, 871 F.2d 572, 575-76 (6th Cir.1989). Vernon Mullins' 1965 Dyer Act conviction was for the theft of a 1957 Ford. His 1980 conviction relates to the receipt of a stolen wrecker boom. Thus, these charges are similar to those for which Mullins was tried in the current case. Charles Tackett's 1977 conviction for removing or falsifying an identification number to a vehicle or engine is likewise similar to the charges in the instant case.
 
 
 20
 Co-conspirator Trotter's testimony indicated that the conspiracy had its inception as early as 1982. Accordingly, Vernon Mullins' 1980 conviction and Tackett's 1977 conviction are not so remote time that they are not probative of these defendants' lack of mistake in receiving and selling the stolen automobiles and parts. See Ismail, 756 F.2d at 1260 (no absolute maximum number of years that may separate a prior act and the offense charged; thirteen-year-old convictions have been held admissible). The same conclusion, however, cannot be reached as easily with respect to the admission Vernon Mullins' 1965 conviction for stealing an automobile. It is unlikely that an intent to receive and sell stolen goods in a conspiracy that transpired in the early 1980's, and possibly the late 1970's, can rationally be inferred from an occurrence in 1965. Notwithstanding the questionable admission of the 1965 conviction, and recognizing that our review is not de novo, we conclude that the underlying prerequisites for admission of evidence under Rule 404(b) have been met in this case.
 
 
 21
 Because prior bad acts are admissible to prove lack of mistake or accident and intent, the prior convictions in the instant case served a permissible purpose under Rule 404(b). Furthermore, the district court did not abuse its discretion in finding that the convictions' probative value outweighed their potential prejudice to the defendants. "An important indication of probative value of evidence is the prosecution's need for the evidence in proving its case." Vance, 871 F.2d at 576. In this case, the government could not merely prove the defendants' possession of the stolen property. It had to show that the defendants knew the property was stolen. Admission of the prior convictions negated any claim of mistake or accident by the defendants and prevented the jury from being misled into believing that the defendants possessed the stolen goods without knowledge of their theft.
 
 
 22
 The government's reference to the prior convictions in its closing statement was no more prejudicial than the admission of the convictions. Read in context, the closing statement's mention of the prior convictions pertained to Vernon Mullins and Charles Tackett, not the remaining defendants. Although defendants Michael Mullins and David Fleming claim that the admission of the prior convictions and the government's comment upon them had a "spill over" effect, this generalized claim of prejudice is insufficient to warrant a reversal. Generally, persons who are indicted together on conspiracy charges should be tried together. United States v. Licavoli, 725 F.2d 1040, 1051 (6th Cir.1984), cert. denied sub nom.; Liberatore v. United States, 467 U.S. 1252. As such, "[m]erely because inflammatory evidence is admitted against one defendant, not directly involving another co-defendant (and with which the other is not charged) does not, in and of itself, show substantial prejudice in the latter's trial." United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir.1985), cert. denied, 474 U.S. 1068 (1986). Moreover, jury confusion and spill over prejudice were made less likely by the trial court's jury instructions regarding the use of the prior convictions. Those instructions made clear that that evidence was to be used only against Vernon Mullins and Charles Tackett. Accordingly, we affirm the trial court's admission into evidence of the prior convictions.
 
 IV.
 
 23
 Defendants Vernon Mullins, Charles Tackett, Jeffrey Howard and Timothy Neal Howard also challenge the trial court's admission into evidence of testimony by co-conspirator Charlie Trotter that he had been shot at and that his house had been trashed by Defendants Jeff Howard and Tim Howard. They allege that because this testimony did not prove or disprove any material issue of fact, the government introduced it solely to portray the defendants as violent persons.
 
 
 24
 The revelation that Trotter was shot at was made on redirect examination by the government to explain why Trotter was no longer residing at his home and was instead staying at a local hotel. On cross-examination of Trotter, the defense counsel attempted to demonstrate that the hotel was a benefit which Trotter was receiving in exchange for his testimony. The government was certainly permitted to show that this was not true. In any event, Trotter testified that he did not know who shot at him.
 
 
 25
 Regarding the trashing of Trotter's home by Jeff Howard and Tim Howard, this allegation was brought out by defense counsel himself during cross-examination of Trotter. The defendants cannot now blame the government for its alleged prejudicial effect.
 
 V.
 
 26
 Defendants Vernon Mullins, Charles Tackett, Jeffrey Howard and Timothy Neal Howard next allege prosecutorial misconduct because the government allowed Charlie Trotter to testify that he received $4,000.00 for cooperating with the F.B.I. during trial when it knew he received $8,000.00. Trotter testified on direct examination that the F.B.I. paid him $4,000.00 for information regarding Vernon Mullins' operation. Before Trotter completed his testimony, a bench conference was convened in which the government clarified that Trotter had been paid an additional $4,000.00 for information unrelated to the chop shop investigation. The government clearly did not allow the witness to perjure himself. Moreover, no substantial prejudice resulted from Trotter's testimony. A paid informant's testimony is admissible if: 1) the government has fully and timely disclosed the fee arrangement; 2) the accused has had ample opportunity to cross-examine the informant and the government agents about the arrangements; and 3) the trial court instructs the jury regarding the suspect credibility of a paid witness. United States v. Rizk, 833 F.2d 523, 525 (5th Cir.1987), cert. denied, 109 S.Ct. 90 (1988). These procedures were followed in the instant case. Accordingly, we reject the defendants' prosecutorial misconduct claim.
 
 VI.
 
 27
 All defendants claim that there was insufficient evidence to convict them of a conspiracy. Defendants Vernon Mullins, Charles Tackett, Jeffrey Howard and Timothy Neal Howard specifically contend that: 1) the testimony of Charlie Trotter was inadmissible because it was not based upon direct knowledge; 2) statements made to Trotter by Jeff Howard were not in furtherance of the conspiracy and thus could not be used as evidence; and 3) there was no direct evidence that the defendants knew of the essential objectives of the conspiracy to steal vehicles and alter their identification numbers. In reviewing a defendant's claim of insufficient evidence to convict, this court views the evidence in a light most favorable to the prosecution and disturbs the verdict only if no rational juror could find the defendant guilty beyond a reasonable doubt. Gallo, 763 F.2d at 1518.
 
 
 28
 Charlie Trotter, the government's principal witness, participated in the chop shop operation from 1982 until 1987, when he had a falling out with Vernon Mullins. He testified that he did "a little bit of everything" and that he visited the chop shop operation on Mullins' property once or twice a month. (J.App. for Nos. 89-6073/75/76/67 at 236). Trotter described the role of each defendant in the conspiracy. Thus, Trotter certainly had firsthand and reliable knowledge of the operation. The defendants complain that most of Trotter's testimony was based upon what Jeff Howard told him. Howard informed Trotter that Howard's role in the conspiracy was to drive behind a stolen truck and to speed or swerve in the event police were spotted in order to divert the police's attention from the stolen truck. Howard also told Trotter the location of stolen property as well as other information concerning various aspects of the chop shop operation. Statements such as these, made to keep a co-conspirator abreast of the conspiracy's activities, are admissible as being "in furtherance of" the conspiracy. Solomon v. Royal Oak Tp., 842 F.2d 862, 874 (6th Cir.1988).
 
 
 29
 With regard to the existence of an agreement among the conspirators, the government did not have to present direct evidence that each defendant knew of the objectives of the conspiracy. "Proof of some kind of formal agreement is not necessary to establish a conspiracy; to the contrary, the existence of a conspiracy may be inferred from acts done with a common purpose." United States v. Ayotte, 741 F.2d 865, 867 (6th Cir.1984). At trial, the defendants stipulated that the vehicles referred to in the indictment were stolen. They were found upon Vernon Mullins' land. Charles Tackett was arrested while driving a stolen semi-truck. Tim Neal Howard owned a stolen vehicle whose identification numbers had been altered. There was testimony that each defendant, except Michael Mullins and David Fleming, stole or assisted in stealing trucks. From these circumstances, a rational juror could infer an agreement among the defendants and find them guilty of a conspiracy beyond a reasonable doubt.
 
 
 30
 The evidence against Defendants Michael Mullins and David Fleming is less substantial than the proof against the other defendants. However, it is sufficient to connect them to the conspiracy. Neither defendant stole vehicles or equipment or drove any of the stolen vehicles. Michael Mullins did body work on the stolen cars and helped with loading the stolen parts onto trucks. Fleming also loaded stolen parts onto trucks. Given the large quantity of stolen vehicles and parts that both defendants worked on and amongst, and allowing reasonable inferences from this evidence regarding Mullins and Fleming's lack of mistake as to the nature of the property they were handling, we conclude that a rational juror could find these defendants guilty of conspiracy beyond a reasonable doubt.
 
 VII.
 
 31
 Defendants Michael Mullins and David Fleming claim that they were denied effective assistance of counsel because the same attorney represented both of them as represented Charles Tackett, a convicted felon whose culpability they allege was greater than theirs. These claims were not raised below and are unreviewable by this court when raised for the first time on appeal. United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989). The defendants should first assert their ineffective assistance claims in district court pursuant to 28 U.S.C. Sec. 2255. United States v. Hill, 688 F.2d 18, 21 (6th Cir.1982) (per curiam).
 
 VIII.
 
 32
 For the above reasons, the defendants' convictions are AFFIRMED.