UNITED STATES of America, Appellee,

v.

Jack IRONS, Appellant.

No. 94–3515.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1995.

Decided May 16, 1995.

Robert Creager, Lincoln, NE, argued, for appellant.

Jan Sharp, Omaha, NE, argued, for appellee.

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

FAGG, Circuit Judge.

Jack Irons and his friend Eugene Berogan were involved in a car crash when Berogan, who was following Irons, struck Irons's van. The car Berogan was driving belonged to another friend of Irons, Richard Dirks. Irons claimed he suffered disabling headaches because of the collision. He obtained disability benefits through two insurance policies with the SMA Life Assurance Company (SMA), and received payments for medical expenses and the damage to his van from other insurance companies. After one of the insurance companies obtained a state court declaratory judgment that Irons, Berogan, and Dirks had staged the collision, the Government brought Irons to trial for staging the collision and submitting fraudulent insurance claims. The jury convicted Irons on four counts of mail fraud and one count of conspiracy to commit mail fraud. The district court entered judgment on the verdict and sentenced Irons to thirty-seven months imprisonment on each count, to run concurrently, and three years supervised release. The court also ordered Irons to pay about $16,000 in restitution. Irons appeals his convictions and sentences. We affirm.

On appeal, Irons contends the district court erroneously denied his pretrial motion to exclude the testimony of Dirks, who testified against Irons as part of a plea agreement with the Government. Irons contends Dirks's agreement with the Government was so coercive, and created such a high risk Dirks would perjure himself, that allowing Dirks to testify violated Irons's Due Process right to a fair trial. According to Irons, the Government offered Dirks lenient treatment in return for testifying, and solicited Dirks to repudiate testimony Dirks gave in two depositions during the earlier state court declaratory judgment action. In those depositions, Dirks testified he did not know about any conspiracy to stage the collision. To encourage Dirks to testify against Irons, the Government persuaded the local county attorney to promise that even if Dirks changed his story at Irons's criminal trial, the county attorney would not prosecute Dirks for perjuring himself in the state trial depositions.

We conclude the use of Dirks's testimony did not violate Irons's right to a fair trial. Concerning the lenient treatment of Dirks, we note that the plea agreement required Dirks to "truthfully testify" at Irons's trial, and it is not unlawful for the Government to promise favors in return for truthful testimony. *United States v. Garcia,* 785 F.2d 214, 221 (8th Cir.), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). Besides, the plea agreement required Dirks to plead guilty to one conspiracy count and to make restitution, and the agreement did not prevent the court from sentencing Dirks to time in prison. Also, the plea agreement did not make favorable treatment for Dirks contingent on convicting Irons. *See Redding v. Minnesota,* 881 F.2d 575, 577 (8th Cir.1989), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990). Dirks thus did not have a stake in the outcome of Irons's trial and had no reason to exaggerate or lie on the stand. *United States v. Peters,* 791 F.2d 1270, 1300 (7th Cir.), *cert. denied,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986); *United States v. Bonadonna,* 775 F.2d 949, 956 (8th Cir.1985). In fact, Dirks's plea agreement stated Dirks would lose the benefit of the agreement if he lied at Irons's trial.

See *United States v. Dailey,* 759 F.2d 192, 197 (1st Cir.1985). The jury was fully informed about the plea agreement and Dirks's earlier testimony in the state trial depositions, and the jury could weigh Dirks's credibility for themselves. *See United States v. Payne,* 940 F.2d 286, 291 (8th Cir.), *cert. denied,* 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991), *and cert. denied,* 503 U.S. 972, 112 S.Ct. 1589, 118 L.Ed.2d 307 (1992); *United States v. Kimble,* 719 F.2d 1253, 1255–57 (5th Cir.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984). Based on all these factors, the district court's decision to admit Dirks's testimony was proper.

■ Irons also raises several sentencing issues. First, Irons challenges the district court's calculation of the loss to the victims under U.S.S.G. § 2F1.1 (1993). The district court found Irons intended to cause SMA a loss of $215,664.96, the amount of disability payments SMA paid Irons, and intended to cause The Hartford Insurance Company a loss of $6362.52, the amount Hartford paid Irons for damage to Irons's van. Accordingly, the court increased Irons's base offense level by eight under U.S.S.G. § 2F1.1(b)(1)(I). Irons argues the loss to SMA was only $50,000, making the total loss $56,362.53, and thus the court should have increased his base offense level by five instead of eight. *See* U.S.S.G. § 2F1.1(b)(1)(F). To support this contention, Irons claims that after the staged collision, Irons was involved in a second, genuine car crash that contributed to his disability. SMA had paid only about $50,000 of the disability benefits before the second collision. SMA sued Irons before Irons's criminal trial to recover payments SMA made based on the staged collision, and the parties settled for $50,000. According to Irons, the existence of multiple disability claims, together with the arm's-length settlement agreement, shows SMA and Irons agreed that the staged collision caused SMA a loss of $50,000, and thus the district court should have found SMA's loss under § 2F1.1 was $50,000.

Irons's argument fails. The record supports the district court's finding that all the disability payments SMA paid Irons were based on the first car accident, not the second. Irons and SMA did settle their civil lawsuit for $50,000, but their settlement agreement explicitly states SMA had paid Irons over $215,000 based on the staged collision. Further, Irons and the Government stipulated that all the disability payments were made "in response to" the staged collision. Although Irons may have been entitled to some of this money based on his later car accident, the later accident would not change the amount of loss Irons intended to cause when he staged the first accident, and thus would have no effect on the § 2F1.1 loss calculation. *See* U.S.S.G. § 2F1.1 n. 7 (enhancement is based on greater of actual or intended loss); *United States v. Little,* 990 F.2d 1090, 1093 (8th Cir.1993). Irons sent SMA false reports about the staged collision and his injuries shortly after the staged collision, before the second car accident ever occurred. It is logical to infer Irons intended to use his fraud to collect the full amount of benefits available under his disability policies with SMA. The district court did not commit clear error in calculating the loss under § 2F1.1, and the eight-level enhancement was proper. *Little,* 990 F.2d at 1093.

■ We also reject Irons's argument that the district court improperly increased Irons's offense level by two for obstruction of justice. *See* U.S.S.G. § 3C1.1. The district court found Irons obstructed justice by committing perjury at his trial. *See id.* n. 3(b). Contrary to Irons's assertion, increasing Irons's offense level for perjury did not unconstitutionally infringe on his right to testify, put forth his factual defense, or appeal his conviction. *United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1119, 122 L.Ed.2d 445 (1993). Reviewing for clear error, we also conclude there is sufficient evidence in the record to support the court's finding of perjury. *See United States v. Clay,* 16 F.3d 892, 896 (8th Cir.1994). Irons's testimony directly contradicted both Dirks's testimony that the car crash was staged and an accident reconstructionist's testimony that the car crash could not have occurred the way Irons described it. *See id.; United States v. Oakie,* 12 F.3d 1436, 1444 (8th Cir.1993).

Finally, Irons contends the district court should have decreased his base offense level by two for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), because Irons settled his civil lawsuit with SMA before his criminal trial and made full restitution to SMA under the settlement agreement. The Guidelines state voluntary payment of restitution before an adjudication of guilt is one factor that may demonstrate acceptance of responsibility. *Id.* n: 1(c). Paying restitution to settle a civil lawsuit, however, does not reveal remorse or a willingness to obey the law and is not what the Guidelines mean by a voluntary payment of restitution. *United States v. Bennett,* 37 F.3d 687, 697–98 (1st Cir.1994). In any case, the district court did not commit clear error in finding Irons did not demonstrate acceptance of responsibility. *United States v. Makes Room For Them,* 49 F.3d 410, 416 (8th Cir.1995). "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt," U.S.S.G. § 3E1.1 n. 2, and Irons maintained throughout trial that he had not staged the collision with Berogan and his disability was genuine. Further, Irons failed to cooperate in the Government investigation, obstructed justice at his trial, and never expressed remorse for his crimes. *See id.* nn. 1 & 4. Because the court did not weigh Irons's intent to appeal against him when the court was considering whether to adjust Irons's base offense level under § 3E1.1, the district court's decision not to make the adjustment did not unconstitutionally infringe on Irons's right to appeal his convictions. *United States v. LaPierre,* 998 F.2d 1460, 1467–68 (9th Cir.1993); *United States v. Rodriguez,* 959 F.2d 193, 197 (11th Cir.) (per curiam), *cert. denied,* — U.S. ——, 113 S.Ct. 649, 121 L.Ed.2d 563 (1992).

Having concluded the district court properly admitted Dirks's testimony and correctly applied the Sentencing Guidelines, we affirm Irons's convictions and sentences.