ORDERED that judgment is entered in favor of the CPSC and against Polaris in the Fine Case (96–6131–CV–SJ–6). It is further

ORDERED that Shelton Wholesale shall pay a fine to the United States in the Fine Case (96–6131–CV–SJ–6) of $100,000, with the first of four equal annual installments due on August 1, 1999. It is further

ORDERED that both Shelton Wholesale and Polaris are enjoined from knowingly or recklessly importing products violative of the FHSA and/or the CPSC regulations. It is further

ORDERED that Shelton's motion for summary judgment on Count V in the NFA Case (97–6021–CV–SJ–6), Shelton's due process claim, is denied. Judgment is entered in favor of the CPSC on Count V of the NFA Case (97–6021–CV–SJ–6).

**UNITED STATES of America, Plaintiff,**

v.

**Donnie MARQUEZ and Gerald Tokala Clifford, Defendants.**

**No. CR 98–30100.**

United States District Court,
D. South Dakota,
Central Division.

Feb. 1, 1999.

---

**46.** Testimony at trial indicated that Polaris is no longer actively used to import fireworks or conduct business. Tr. 369. Because its future status is not known, however, injunctive relief against it is nevertheless appropriate. Mr. Shelton testified that he believed Shelton Wholesale would continue to be used to import fireworks. Tr. 369.

**47.** "Knowing" violations will be determined in any future contempt proceedings based on normal usage, not the special statutory definition. Since a reckless violation is more easily proved, but appears to be more difficult to establish than a statutory violation, it is not likely the parties will be exposed to contempt proceedings in a harassing manner.

**1168**

Mara M. Kohn, Assistant U.S. Attorney, Pierre, SD, for plaintiff.

Michael B. Strain, Pierre, SD, for Donnie Marquez, defendant.

Bruce H. Ellison, Rapid City, SD, for Gerald Tokala Clifford, defendant.

## AMENDED ORDER DENYING MOTION TO SUPPRESS TESTIMONY

KORNMANN, District Judge.

[¶ 1] Defendant Clifford filed a motion to suppress the testimony of anticipated prosecution witnesses, Doc. 57, and defendant Marquez filed a notice of intent to join the motion of his co-defendant, Doc. 73. The government filed a response, Doc. 72. This motion presents very substantial questions related to the appropriate interpretation of 18 U.S.C. § 201(c)(2), and derives from the recent panel decision of the U.S. Court of Appeals for the Tenth Circuit in *United States v. Singleton*, 144 F.3d 1343 (10th Cir. July 1, 1998), *vacated and reh'g en banc granted*, 144 F.3d at 1361–62 (10th Cir. July 10, 1998). The defendant asks this Court to interpret 18 U.S.C. § 201(c)(2) as Congress wrote it. The statute is clearly written. It is extremely broad. There are no ambiguities.[1] Seeking to correctly interpret and apply this statute has caused this Court to think of the condemnations launched by a few members of Congress, even to the extent of threatening possible impeachment proceedings against federal judges who, for various reasons, and on a limited number of occasions, refuse to apply a Congressional Act literally and exactly as written. A few judges have been condemned as "activist judges" as they consider not only the language of the statute and the legislative history but also the common law in England and in the United States. This is not to say, of course, that all judges are not obliged to do the very best job possible ascertaining congressional intent and faithfully following the intent of those who write the statutes which we must follow.

[¶ 2] In this unusual case, I decline to apply the literal reading of the statute as Congress wrote it. While it is tempting to do so, I adopt the canon of statutory interpretation that tells us that general words of a statute do not include the government or affect governmental rights unless the text of the statute expressly includes the government. *Nardone v. United States*, 302 U.S. 379, 383, 58 S.Ct. 275, 277, 82 L.Ed. 314 (1937); *see also* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise ... the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."). To apply the statute in question to the government in connection with plea agreements and testifying co-defendants or alleged co-conspirators "would deprive the sovereign of a recognized or established prerogative title or interest." *Nardone*, 302 U.S. at 383, 58 S.Ct. at 277. The concept of affording cooperating accomplices with leniency dates back to the common law in England, *see, e.g., Rex v. Rudd*, 99 Eng. Rep. 114 (1775), and has been recognized and approved by Congress, the United States Sentencing Commission, and the federal judiciary. *See, e.g.,* 18 U.S.C. § 3553(e); 18 U.S.C. §§ 6001–6005; 28 U.S.C. § 994(n); Fed.R.Crim.P. 11 and 35(b); Fed.R.Evid. 410; U.S.S.G. § 5K1.1(a)(2); *The Whiskey Cases (United States v. Ford)*, 99 U.S. 594, 9 Otto 594, 25 L.Ed. 399 (1878); *Benson v. United States*, 146 U.S. 325, 13 S.Ct. 60, 36

---

1. 18 U.S.C. § 201(2)(c) provides, in relevant part:

    Whoever ... directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony ... as a witness upon a trial, hearing, *or other proceedings ... shall be fined under this title or imprisoned for not more than two years, or both.*

L.Ed. 991 (1892); and *United States v. Ming He,* 94 F.3d 782, 787–89 (2d Cir.1996).

[¶ 3] The plain meaning of 18 U.S.C. § 201(c)(2) read in isolation suggests that it would be unlawful for prosecutors to offer leniency and other benefits to cooperating witnesses to obtain their testimony. However, this Court would be remiss if it refused to read the statute in the broader context of other relevant statutes embodying policy determinations related to effective law enforcement that encourage and sanction the practice and the judicial decisions interpreting those statutes. *See United States v. Fausto,* 484 U.S. 439, 453, 108 S.Ct. 668, 676–77, 98 L.Ed.2d 830 (1988) (discussing the "classic judicial task of reconciling many laws enacted over time and getting them to 'make sense' in combination ...."). Moreover, the government aptly cites *Green v. Bock Laundry Mach, Co.* to argue that "[a] party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." 490 U.S. 504, 521, 109 S.Ct. 1981, 1991, 104 L.Ed.2d 557 (1989). In this case, no such illuminating legislative history exists.

[¶ 4] In addition, important and effective safeguards have been developed to guard against the abuses that may result from the government practice of conferring benefits to cooperating witnesses. Courts have uniformly held that a witness may testify so long as (1) the agreement between the government and the witness is fully divulged so that the jury can evaluate the witness's credibility; (2) defense counsel is permitted to cross-examine the witness about the agreement; and, (3) the jury is specifically instructed to weigh the witness's testimony with caution. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Cervantes–Pacheco,* 826 F.2d 310, 315 (5th Cir.1987); and *United States v. Dailey,* 759 F.2d 192, 196 (1st Cir.1985). These safeguards strike a balance between the competing interests of effective law enforcement and the need for reliable testimony in court. *See United States v. Richardson,* 764 F.2d 1514, 1521 (11th Cir.1985) (reasoning that "the government cannot be expected to depend exclusively upon the virtuous in enforcing the law"). This Court also agrees that the United States, not individual prosecutors,

enters into plea agreements with defendants that may confer benefits for their testimony against co-conspirators and relies on the holding of the U.S. Court of Appeals for the Sixth Circuit:

> When an Assistant United States Attorney (AUSA) enters into a plea agreement with a defendant, that plea agreement is between the United States government and the defendant. When an AUSA uses at trial testimony obtained through a plea agreement or an agreement not to prosecute, he does so as the government. An AUSA who, pursuant to the provision of the United States Sentencing Guidelines, moves for a downward departure under § 5K1.1, does so as the government.

*United States v. Ware,* 161 F.3d 414, 421 (6th Cir.1998). The Court is also persuaded by the argument that leniency conferred under a plea agreement is subject to the district court's approval. Fed.R.Crim.P. 11(e); *see also United States v. Arana,* 18 F.Supp.2d 715, 721 (E.D.Mich.1998) (holding that "the prosecutor has nothing more than the power of persuasion to encourage the Court to be lenient in sentencing the testifying co-defendants").

[¶ 5] The government also argues that adopting the *Singleton* panel's conclusion to grant the defendant's motion to suppress testimony would produce absurd results. The Court does not find this argument compelling. An absurd result does not exist every time statutory provisions conflict; courts must simply do their best to reconcile them. Moreover, merely because a judicial decision would work havoc on a commonplace practice does not render it an absurd result requiring exclusion of the sovereign in a court's interpretation of the statute.

[¶ 6] I have read and carefully considered all cases dealing with this issue since the Tenth Circuit panel issued its decision in *Singleton.* Oral argument was there conducted *en banc* on November 30, 1998. Many of these post-*Singleton* cases are cited and discussed in *United States v. Haese,* 162 F.3d 359, 367–68, n. 1 (5th Cir.1998). Many cases are also cited and discussed in *Ware,* 161 F.3d 414, 418. I have also read pre-*Singleton* cases decided by the United States Supreme Court and various cases decided by United States

Courts of Appeal. *See, e.g., Giglio,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104; *Hoffa v. U.S.,* 385 U.S. 293, 310–12, 87 S.Ct. 408, 417–19, 17 L.Ed.2d 374 (1966); *United States v. Irons,* 53 F.3d 947, 948 (8th Cir.1995); *Cervantes–Pacheco,* 826 F.2d 310. I have read *United States v. Sargent,* in which it is stated: "Moreover, we reject any suggestion by Sargent that the district court should have found his conspirators' trial testimony unreliable because it resulted from a plea agreement". 162 F.3d 1165, 1998 WL 544412, at *1 (8th Cir.1998) (citing *United States v. Wicker,* 80 F.3d 263, 268 (8th Cir.1996)). It is true that Sargent did not raise below the claim of error based on 18 U.S.C. § 201(c)(2), but the Court found no plain error in connection with the admission of the testimony.

[¶ 7] With my apologies for some plagiarism to Judge Smalkin of the District of Maryland in *United States v. Eisenhardt,* 10 F.Supp.2d 521, 521–22 (D.Md.1998), the chances of either or both the Eighth Circuit and the United States Supreme Court reaching the same conclusion as the original *Singleton* panel are, in my humble opinion, about the same as discovering that the entire roster of the Minnesota Vikings consists of cleverly disguised cheese-heads.

Therefore,

IT IS ORDERED:

The defendant's motion to suppress testimony, Doc. 57, is denied.