**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles William BEARD,**
**Defendant-Appellant.**

**No. 84–3118.**

United States Court of Appeals,
Eleventh Circuit.

May 30, 1985.

Jack Harris, Ralph N. Greene, Jacksonville, Fla., for defendant-appellant.

M. Alan Ceballos, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

HATCHETT, Circuit Judge.

We must determine whether the government's method of making payments to a confidential informant constituted a contingency fee arrangement in violation of the rule announced in *Williamson v. United States*, 311 F.2d 441 (5th Cir.1962). Agreeing with the district court that the arrangement was not improper, we affirm.

By an oral agreement in March, 1983, the Drug Enforcement Administration (DEA) hired Selwyn Hall as a confidential informant. Between March and October, 1983, Hall participated in approximately 20 undercover narcotics transactions with the DEA. For his investigative services, Hall received regular periodic payments ranging from $100 to $350. DEA Agent Dean told Hall that he would receive an additional

reward at the conclusion of the investigation and subsequent trials. By October 14, 1983, the DEA had paid Hall approximately $8,000. This amount included out of pocket expenses and a $1,000 relocation payment. Further, the U.S. Attorney's Office agreed to sponsor Hall as a participant in the U.S. Marshal Service's Witness Security Program.

On two occasions, April 14, 1983, and April 21, 1983, Hall introduced undercover DEA Agent Edgar Moses to Charles Beard (appellant). During these meetings, Beard sold cocaine to Agent Moses. DEA agents tape recorded and maintained surveillance of the transactions.

A grand jury indicted Beard on two counts of narcotics violations under 21 U.S.C.A. § 841(a)(1) (West 1981) and 18 U.S.C.A. § 2 (West 1969). Informant Hall and DEA Agents Moses and Dean testified as the government's witnesses. A jury convicted Beard on both counts.

Beard raises two issues on appeal, both based on the government's use of Hall's testimony: (1) whether the district court erred by reserving its ruling on Beard's motion to dismiss until after the government presented its evidence; and (2) whether the district court erred in denying Beard's motions for judgment of acquittal and new trial.

## DISCUSSION

On October 14, 1983, the Assistant U.S. Attorney sent a letter to Beard's lawyer informing him of the employment arrangement between the DEA and Hall. On October 27, 1983, Beard filed his motion to dismiss arguing a violation of his due process rights because the government was improperly paying an informant on a contingency fee basis. *Williamson v. United States*, 311 F.2d 441 (5th Cir.1962). During a status conference on November 18, 1983, the district court scheduled a hearing date for December 5, 1983, the first day of trial.

On December 5, 1983, without discussing Beard's motion to dismiss, the district court directed the parties to select a jury. Beard asserts that he was prejudiced by the district court's refusal to conduct an evidentiary hearing on his motion to dismiss prior to trial. Beard claims that he was denied the opportunity to determine the existence of any *Williamson* violations by examining the government witnesses. Also, Beard contends that under Federal Rule of Criminal Procedure 12(e), the district court must address pretrial motions unless it orders that, for good cause, a determination should be deferred until later in the trial. Rule 12(e) provides:

> *Ruling on Motion.* A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.

Fed.R.Crim.P. 12(e).

The government argues that the district court was not required to hold an evidentiary hearing on a pretrial motion under rule 12(e). Further, rule 3.01(d), United States District Court, Middle District of Florida, provides that the district court may allow oral argument upon a party's written request.[1]

■ The district court did not abuse its discretion. The district court had good cause to reserve ruling on the motion to dismiss, and its decision was based on sound judicial economy. Beard's case was the seventh in a series in which confidential informant Hall testified. The judge in this case presided over the six prior cases. In the prior cases, similar pretrial motions based on *Williamson* violations had been

---

1. Rule 3.01(d) provides in pertinent part:

 (d) Motions and other applications will ordinarily be determined by the Court on the basis of the motion papers and briefs or legal memoranda; provided, however, the Court may allow oral argument upon the written request of any interested party or upon the Court's own motion.

raised; the district court routinely deferred its decision until the evidence had been presented. Also, Beard did not mention the motion to dismiss until after the government had presented its case.

A district court is not required to hold an evidentiary hearing on a pretrial motion. *United States v. Fischel*, 686 F.2d 1082, 1095 (5th Cir.1982). The district court was sufficiently familiar with the series of cases that involved informant Hall. Additionally, cross-examination provided Beard with the opportunity to explore potential *Williamson* violations. A similar examination of the evidence prior to trial would have unnecessarily consumed judicial time. Further, during the trial, Beard could have requested that the witnesses address particular questions outside of the jury's presence. The district court acted properly within its discretion in deciding to reserve ruling on Beard's motion to dismiss until the government's presentation of evidence.

Beard also argues that the district court erroneously denied his motions for acquittal and new trial based upon *Williamson* violations. In the letter dated October 14, 1983, the government disclosed the arrangement between the DEA and Hall. Also, the government stated that "Mr. Hall has also been advised that he might be eligible for an additional reward for his investigative assistance." Beard asserts that the DEA hired Hall on a contingent fee basis. Thus, Beard asserts that Hall had a motive to lie and conceal true facts in order to deliver favorable testimony for the government. Beard contends that because Hall had completed his "field work" investigation before October 14, Hall's subsequent "assistance" was only his testimony. Hence, Hall's reward was contingent upon his performance as a government witness. Beard insists that, as a matter of law, Hall's testimony was tainted and improper for jury consideration.

In *Williamson*, the government agreed to pay an informant a specified lump sum to convict two individuals. The court stated that although the government investiga-

tors may have had certain prior knowledge regarding the defendants' illegal liquor transactions to justify the contingent fee arrangement with an informant, the government did not develop those facts or circumstances. The court refused to sanction a contingent fee arrangement to produce evidence against particular named persons without some justification or explanation. "Such an arrangement might tend to a 'frame up,' or to cause an informer to induce or persuade innocent persons to commit crimes which they had no previous intent or purpose to commit." *Williamson*, 311 F.2d at 444.

The government contends that *Williamson* is inapplicable because the DEA did not pay Hall on a contingent fee basis. Rather, the DEA provided Hall with regular periodic subsistence allowances. The government argues that the October 14, 1983, letter merely memorialized the March, 1983, oral agreement between the DEA and Hall; the government did not declare any new promises to pay Hall based solely on the quality of his testimony.

The government wrote the letter as a *Brady* disclosure. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Further, the original agreement between the DEA and Hall provided that Hall's investigative services included his "field work" and subsequent appearances as a witness.

Often, an oral agreement between the government and a confidential informant provides that an informant must furnish investigative field services and testify truthfully at trial. Following the informant's performance, he may be entitled to a reward based upon a review of all services rendered. We have refused to automatically condemn an agreement "where an informant is paid a subsistence allowance and given a reward," without considering the other contract provisions. *United States v. Garcia*, 528 F.2d 580, 586 (5th Cir.1976).

The government agreement provided that Hall must testify truthfully. Hall acknowledged under oath that he appreciated his obligation to tell the truth. Also, he recognized that the DEA would consider the quality of his investigative services, as a whole, including his testimony as a witness in calculating his reward. Yet, although Hall realized that his reward may be jeopardized, he admitted that he was "double dealing" the government; while working with the DEA, he received about $1,500 in kickbacks from the drug dealers. During Hall's undercover investigative work, the government was not aware of Hall's double dealing operation. DEA Agent Dean testified that Hall understood that his reward would be calculated upon the completion of all his governmental services, including his testimony. Hall confirmed this understanding. We find *Williamson* inapplicable to this case.

 Beard contends that Hall was not a credible witness because he admittedly used cocaine during his governmental service and had many criminal charges, including drug violations, pending against him in state court. Further, Beard argues that Hall's criminal background, coupled with the incentive of a reward for favorable testimony, induced Hall to misrepresent the facts at trial.

During the trial, both parties introduced Hall as a convicted felon, previous drug dealer, current cocaine user, and an overall "unsavory character." Both parties acknowledged that Hall was presently serving a sentence and had other criminal charges pending against him in state court. Hall's past was no secret. Hall, however, was not the government's only witness. Two DEA agents, Dean and Moses, also testified. Both agents had participated in the undercover operations with Hall. The agents' testimony corroborated Hall's recitation of the DEA transactions with Beard.

 Moreover, we are mindful that "a defendant is entitled to a special cautionary instruction on the credibility of an accomplice or a government informer if he requests it and the testimony implicating the accused is elicited solely from the informer or accomplice." *Garcia*, 528 F.2d at 587–88. "The rationale behind this requirement is to ensure that no verdict based solely on uncorroborated testimony of a witness who may have good reason to lie is too lightly reached." *Garcia*, 528 F.2d at 588. Here, the court gave a cautionary instruction to the jury regarding Hall's credibility as a witness in light of his role as a government informant who received pay for his services. Also, the court instructed the jury to exercise care in considering the credibility of a witness informant, previously convicted of a felony or a crime involving dishonesty or false statements, and who used drugs during his government service. We find that Beard was afforded adequate protection against prejudice stemming from the government's use of a confidential informant witness. Accordingly, we find no error.

Beard argues that the government's compensation to Hall violated the American Bar Association's code of professional responsibility.[2] Because we find that the DEA did not pay Hall contingent upon his testimony, this argument is without merit. We affirm.

AFFIRMED.

---

2. The Code of Professional Responsibility, DR 7–109(C), provides in relevant part:

A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case.