**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-10750

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JARNEL SAEL,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:24-cr-60086-RS-2

————————————————

Before JORDAN, KIDD, and TJOFLAT, Circuit Judges.

PER CURIAM:

Jarnel Sael appeals his conviction for one count of possession of fifteen or more unauthorized and counterfeit access devices, three counts of aggravated identity theft, and one count of possession of access-device making equipment. He argues that the District Court erroneously granted the Government's motion to introduce his prior conviction under Federal Rule of Evidence 404(b) and that the District Court erroneously deferred its ruling on the Rule 404(b) evidence until after trial commenced. We affirm.

## I.

Law enforcement officers conducted a traffic stop of Jarnel Sael in October 2022 after noticing the car he was driving had an altered and expired tag. Teresa Montgomery, the owner of the car, was in the passenger seat. The officers could smell burnt cannabis emanating from inside the car. Sergeant Andrew Clark then used a flashlight to see inside the car and noticed a black credit card skimmer, or credit card encoding machine, in plain view protruding from the pocket behind the driver's seat. Clark asked Sael for his driver's license and noticed numerous credit cards in Sael's wallet when he opened it. This raised further suspicion. The officers asked about Sael and Montgomery's criminal history. Montgomery stated that she had previously been convicted of fraud and was currently on pretrial release. Sael stated that he had previously been convicted of grand theft. The officers then asked Sael and Montgomery to step out of the car, detained them, and searched the vehicle.

During the search of the car, the officers discovered several unendorsed money orders, an unendorsed check, and a voided check endorsed to the Greater Miami Jewish Federation, along with the previously seen black credit card skimmer. They also removed a blue wallet fastened to Sael's belt loop with twenty debit cards and multiple driver's licenses.[1] Sael confirmed that the wallet was his. Five of the debit cards had Sael's name on them, two had Montgomery's name, and the other thirteen had the names of other people.[2] Montgomery's purse, which was in the backseat of the car, contained twenty-two debit cards, some with her name and some with others' names. It also contained a notebook with the names, birth dates, and social security numbers of other people listed in it.

A grand jury indicted Sael and Montgomery in May 2024. The indictment charged Sael with one count of possession of fifteen or more unauthorized and counterfeit access devices, in

---

[1] The parties disagree about the number of licenses found. Sael states that there were two Florida driver's licenses, two Florida learner's permits, and one Florida identification card. He also states that two of the cards contained the information and photo of other people, while one had the information of other people but the photo of Sael. The Government states that Sael had three driver's licenses in his wallet, all of which had the information of other people but one with Sael's photo.

[2] It was later discovered that thirteen of the cards had been re-encoded with account numbers different from those embossed on them, other cards had damaged chips, and one card belonged to a resident of Kissimmee, Florida, but had been shipped to an address in Miami.

violation of 18 U.S.C. § 1029(a)(3) (Count 1)[3]; three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 2, 3, and 4); and one count of possession of access-device making equipment, in violation of 18 USC § 1029(a)(4) (Count 5). On November 27, 2024, the Government filed a motion to admit evidence under Rule 404(b) that Sael pleaded guilty and was convicted in 2019 in Florida for one count of grand theft, one count of fraudulent use of personal identification, and one count of forgery of a credit card. Sael filed a motion to strike on December 2, 2024, arguing that the "late filing" was an act of gamesmanship by the Government. Trial commenced one week later on December 9. The Government raised its motion again, orally, prior to opening statements, and stated that it intended to introduce the conviction through the testimony of an agent. The Court asked the Government for caselaw to show it was allowed to introduce the conviction without Sael testifying, and it stated that it would defer its ruling so that it could review the caselaw.

On December 10, 2024, during trial, the Court granted the Government's Rule 404(b) motion, stating that the past conviction did "satisfy all requirements to make [it] admissible" and was necessary for the Government to prove Sael's guilt beyond a

---

[3] An access device is a card; an account number; or personal identifying information, including a social security number, date of birth, or address, that a person can use to help open a bank account or take out a loan. A counterfeit access device is a fake or forged device. An unauthorized access device is an access device that is stolen or used and obtained with the purpose or intent to defraud.

reasonable doubt. Before the jury heard the evidence, the judge informed the jury that the information must not be considered "to decide whether [Sael] engaged in the activity alleged in the indictment," but that it was for the "limited purpose" of "assisting in determining whether [Sael] had the state of mind or intent necessary to commit the crime charged in the indictment."

Montgomery and Sael both testified at Sael's trial.[4] Montgomery testified that she and Sael were dating at the time of the traffic stop and that they had spent that day getting money orders from different businesses with the fraudulent credit cards. She explained that Sael ordered the skimmer online, showed her how to use it, and kept it in the car that day for safekeeping. They used the cards to buy money orders because they were untraceable, and Montgomery typically went inside the store to buy them with Sael coaching her on the phone. Further, the notebook was written in both of their handwritings, and Sael had someone else help him buy the information they kept in it.

Sael, in turn, testified that he never touched the skimmer, that he had nothing to do with the notebook, and that he was just a driver that day. He also gave various reasons for why he had the different cards in his wallet. For example, he claimed some belonged to old friends and some were never in his wallet but were instead in the car. He also admitted to the 2019 conviction that was already introduced through the agent's testimony.

---

[4] Montgomery had already pleaded guilty to her charges.

Before closing arguments, the District Court gave another limiting instruction to the jury related to the Rule 404(b) evidence. It told the jury that it could not consider Sael's prior bad acts in determining whether he engaged in the offense for which he was on trial, but that it could consider them "for a limited purpose" of determining whether Sael had the state of mind, intent, motive, or opportunity necessary to commit the crime charged; whether he "acted according to a plan" or "in preparation to commit a crime"; or whether he committed the charged acts "by lack of accident or absence of mistake." The jury ultimately found Sael guilty on all five counts.

Sael was sentenced to a total of 45 months' imprisonment—twenty-one months for Counts 1 and 5, to run concurrently with each other, and twenty-four months for Counts 2, 3, and 4, to run concurrently with each other and consecutive to Counts 1 and 5—followed by three years of supervised release The Court also imposed monetary penalties. Sael timely appeals.

## II.

Sael argues that the District Court erroneously admitted the evidence of his prior conviction because it was irrelevant under Rule 401 and unduly prejudicial under Rule 403. He also argues that the Court erroneously deferred its ruling on the motion to admit the evidence until after trial commenced. We discuss each claim in turn.

### A.

"We review the district court's admission of prior crimes or bad acts under Rule 404(b) for abuse of discretion." *United States v. Culver*, 598 F.3d 740, 747 (11th Cir. 2010) (internal quotation marks omitted) (alterations adopted).

Evidence of prior bad acts is inadmissible to establish the defendant's character or propensity, but it may be admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

We apply a three-part test to determine the admissibility of a prior bad act under Rule 404(b): (1) "it must be relevant to an issue other than [the] defendant's character"; (2) there must be "sufficient proof" for a jury to find by a preponderance of the evidence that the defendant committed the prior bad act; and (3) the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must satisfy Rule 403. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Regarding the first prong, "[s]imilarity of the extrinsic offense to the offense charged is the standard by which relevancy is measured under Rule 404(b)." *United States v. Kopituk*, 690 F.2d 1289,

1334 (11th Cir. 1982); *see also* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Indeed "[a] finding that the offenses involved the same state of mind renders the extrinsic offense relevant to an issue other than character because it lessens the likelihood that the defendant acted with lawful intent in connection with the charged offense." *Id.* Further, a "defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998).

For the second prong, where a prior conviction is based on a guilty plea, there is sufficient evidence for the jury to find by a preponderance of the evidence that the prior act occurred for purposes of Rule 404(b) admissibility. *United States v. Booker*, 136 F.4th 1005, 1014 (11th Cir. 2025).

And for the third prong, "[w]hether the probative value of Rule 404(b) evidence outweighs its prejudicial effect depends upon the circumstances of the extrinsic offense." *United States v. Dorsey*, 819 F.2d 1055, 1061 (11th Cir. 1987). We consider various factors such as "the strength of the government's case on the issue of intent, the overall similarity of the extrinsic and charged offenses, the amount of time separating the extrinsic and charged offenses[,] and whether it appeared at the commencement of trial that the

defendant would contest the issue of intent." *Id.* We have found that a six-year span between a prior conviction and present conduct was not so remote as to diminish the prior act's probative value. *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997). And unfair prejudice is mitigated by a district court's limiting instruction. *Id.* at 1346. Further, Rule 403's exclusionary function is used sparingly, for "the balance should be struck in favor of admissibility." *Edouard*, 485 F.3d at 1344 n.8 (internal quotation marks omitted).

Here, the District Court correctly applied the 404(b) test and did not abuse its discretion. First, the Government submitted Sael's prior conviction to show his intent, not character, to commit the present crime, which Sael put at issue by pleading not guilty. *See Zapata*, 139 F.3d at 1358. Further, the 2019 conviction was for, among other things, forgery of a credit card and fraudulent use of personal identification. These are very similar to the instant charges of identity theft, possession of a credit card skimmer, and possession of fifteen or more counterfeit access devices. Both involve deceit, forgery, and fraud. In other words, the same state of mind is required to commit both.[5] Thus, the 2019 conviction is relevant to the issue of intent for the present offense.

---

[5] Though the judge did not expressly state that the two crimes required the same state of mind, he did review the crimes involved in the past conviction and the instant offense. He then stated the 404(b) requirements, including relevance; that a past conviction can be probative of state of mind; and that the 404(b) requirements were met here.

Second, the 2019 conviction was based on a guilty plea. As a matter of law, then, there was sufficient proof for the jury to find by a preponderance of the evidence that Sael committed that prior offense. *Booker*, 136 F.4th at 1014.

Last, the probative value of the 2019 conviction was not substantially outweighed by undue prejudice. As already stated, the past conviction and the present offense are very similar, and they occurred only five years apart. Further, Sael's not guilty plea made clear at the start of trial that he would contest intent. And beyond that, the Court gave the jury two limiting instructions related to the past conviction. The conviction's probative value was not substantially outweighed by undue prejudice.

The Court did not abuse its discretion in admitting the 2019 conviction.

### B.

We review for abuse of discretion a district court's decision to reserve ruling on a pretrial motion until after a trial begins. *United States v. Beard*, 761 F.2d 1477, 1479 (11th Cir. 1985). However, when a party raises a claim of evidentiary error for the first time on appeal, we review only for plain error. *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). To establish plain error, the party must show (1) there is "error, (2) that is plain, and (3) that has affected [his] substantial rights." *United States v. Hesser*, 800 F.3d 1310, 1324 (11th Cir. 2015). If those three conditions are met, the Court "may exercise [its] discretion to recognize a forfeited error" if (4) "the error seriously affects the fairness, integrity or public

reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted) (alterations adopted).

In regard to the second prong of plain error review, an error cannot be plain if it is not obvious or clear under current law. *United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999). In other words, "where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). For the third prong, a plain error does not affect a substantial right unless "there is a reasonable probability that there would have been a different result had there been no error." *United States v. Bennett*, 472 F.3d 825, 831–32 (11th Cir. 2006).

"The [district] court must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d). Such "good cause for deferral exists only if facts at trial will be relevant to the court's decision," *United States v. Adkinson*, 135 F.3d 1363, 1369 n.11 (11th Cir. 1998), for deferral in that situation is in the interest of "sound judicial economy." *United States v. Beard*, 761 F.2d 1477, 1479 (11th Cir. 1985). "Indeed, one of the primary components of the Rule 404(b) calculus is the strength of the government's evidence, a matter that plainly cannot be properly ascertained until the trial itself." *United States v. Jernigan*, 341 F.3d 1273, 1286–87 (11th Cir. 2003) (citation omitted).

Though Sael filed a motion in the District Court to strike the Government's Rule 404(b) motion because of its "late filing," he

did not object to the District Court's decision to defer ruling on the Government's motion until after trial commenced.[6] Because he raises this issue now for the first time on appeal, we review for plain error. Sael fails under that test.

At step one, we find no error in the Court's choice to defer ruling on the Rule 404(b) motion. Though it stated that it would defer ruling on the motion in order to review the relevant caselaw, when it later ruled on the motion it stated that it found "the Government's incremental need for the evidence to prove guilt beyond a reasonable doubt [was] essential." It, thus, clearly weighed the strength of the Government's case when it made the decision. Indeed, right before the Court ruled on the motion, the prosecutor explained that Sael's opening statement "put knowledge and intent at issue and . . . blam[ed] the entire thing on [Montgomery]." In other words, the motion was clearly not "entirely segregable" from the evidence to be presented at trial, *see Adkinson*, 135 F.3d at 1369 n.11, so deferral was not error. Sael fails at the first prong of plain error review. We need not analyze the second, third, or fourth.[7]

---

[6] We note that Sael's motion below stated that the Government's Rule 404(b) motion was an act of "gamesmanship" because the case had been close to trial multiple times before without any similar motion from the Government and because the Government now filed the motion during a shortened holiday week. Sael gave no caselaw in support of his claim and, regardless, does not raise it again here. We, thus, need not consider the argument.

[7] Though, we do note that Sael's proposition that he "may have" waived his right to a jury trial if he had known earlier that the 2019 conviction would be admitted does not rise to a reasonable probability that the result would have been different, as required under the third prong. First, we do not know

There was no plain error.

## III.

The District Court did not err by admitting the past conviction or by deferring its ruling on the admission.

**AFFIRMED.**

---

whether he actually would have waived the right. Second, we do not know whether the Government would have agreed to a plea deal or whether the Court would have approved it.